[Civ. No. 33445. First Dist., Div. Two. Dec. 23, 1974.]

HONEYWELL INFORMATION SYSTEMS, INC., Plaintiff and Appellant, v.
COUNTY OF SONOMA et al., Defendants and Respondents.

[Civ. No. 33446. First Dist., Div. Two. Dec. 23, 1974.]

HONEYWELL, INC., Plaintiff and Appellant, v.
COUNTY OF SONOMA et al., Defendants and Respondents.

24

**COUNSEL**

Clyde R. Maxwell and R. Brooks Baker for Plaintiffs and Appellants.

James R. Botz, County Counsel, and Thomas B. Sawyer, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**KANE, J.**—Honeywell, Inc. and Honeywell Information Systems, Inc.

(hereinafter "appellant")[1] appeal from the trial court's judgment denying relief in their respective actions brought for refund of property taxes assessed and collected on certain leased property.

The summarized facts reveal that under a three-year agreement appellant leased an electronic computer and data processing system ("computer system") to Sonoma County Schools (hereinafter "County") in return for payment of a flat monthly charge. By the terms of the original agreement, the County was allowed a 25 percent educational discount, which rate, however, was reduced to 10 percent under a two-year extension of the contract. While the County was free to utilize the leased equipment for hire for both educational and noneducational purposes, under the provisions of the agreement it was entitled to the educational discount only if the computer system was used for internal or joint instructional, academic and scientific programs.[2]

The computer system was installed on the County's premises and was operated exclusively by personnel employed by the County. Soon after the data processing center became operational in 1967-1968, the County entered into contracts with parochial schools to furnish them specified materials which were either similar or identical to those processed for the participating public schools, and utilized the computer system also for local private businesses which were unrelated to any educational activity. The total time devoted to processing material for the parochial schools averaged about 3 percent, while the time used for private businesses amounted to approximately 0.56 percent of the total computer time available. The dollar amounts derived from these outside services were, however, quite substantial. The evidence shows that during the disputed period the County received from the parochial schools about $22,500 to $29,300 per year, whereas the private firms paid about $2,000 to $8,000 per year during the same period. The record is undisputed that all

---

[1]Appellant Honeywell, Inc. ("Honeywell") was the original owner and lessor of the leased property in question. In September 1970 appellant Honeywell Information Systems, Inc., succeeded to all rights and obligations of Honeywell. Since the substantive issues are identical in both actions, appellants consolidated their argument in the brief. Unless otherwise indicated, the word "appellant" will refer to both appellants.

[2]The pertinent portion of the agreement reads as follows: "*Educational uses qualifying for the educational discount,* as aforesaid, *shall mean all uses associated with instruction, academic and scientific research, and administration of the internal affairs of the qualifying institution. Educational uses,* as above defined, *shall also be deemed to include instructional, academic and scientific research with respect to other organizations cooperating with the institution in a joint instructional program or academic and scientific program,* provided, however, that the institution does not charge any such organization for more than a pro-rata share of the institution's direct cost incurred in connection with any such joint program.*" (Italics added.)

income derived from both the parochial schools and private businesses was used by the County for its general purposes.

Since under the explicit terms of the agreement personal property taxes were to be paid by appellant lessor, respondent levied property taxes on the leased equipment against appellant for certain fiscal years. Appellant paid the taxes under protest, then filed a claim for refund of taxes along with interest accrued thereon on the ground that the computer system in question was used exclusively for public school purposes and was exempt from taxation under California Constitution, article XIII, section 1, and Revenue and Taxation Code, section 202, subdivision (c). After respondent denied the claim for refund, appellant took recourse to the court, reiterating that the assessment and collection of the property taxes at issue were unlawful because the equipment was exempt from taxation on the aforesaid grounds. Upon the evidence submitted by the parties,[3] the trial court found that the property in question was not used exclusively for public schools, and that the use of the equipment for parochial schools and private businesses destroyed the exemption secured by the Constitution and the statute. We affirm.

In the controversy at hand we are invited to define the scope and interpret the meaning of the phrase "property used exclusively for public schools."[4] The question here raised is admittedly one of first impression.

In resolving the issue at hand, preliminarily we note that as a general rule constitutional provisions and statutes granting exemption from taxation are strictly construed to the end that such concession will not be enlarged nor extended beyond the plain meaning of the language employed (*Cypress Lawn C. Assn.* v. *San Francisco* (1931) 211 Cal. 387, 390 [295 P. 813]; *San Francisco* v. *San Mateo* (1941) 17 Cal.2d 814, 817 [112 P.2d 595]; *Seventh Day Adv. Kan. Conf. A.* v. *Board of Cty. Com'rs* (1973) 211 Kan. 683 [508 P.2d 911, 917]). In this regard, it is immaterial that the institutions upon which the tax exemption is conferred may contribute to the public welfare and serve the interests of the state; for they too, like other owners of property, have the burden of

---

[3]The cause was decided upon evidence consisting of an agreed statement of facts, affidavits in support of a motion for summary judgment, verified petition for refund of taxes paid and contract documents with exhibits attached.

[4]California Constitution, article XIII, section 1, provides in pertinent part that *property used exclusively for public schools* shall be exempt from taxation. Revenue and Taxation Code, section 202, sets forth in relevant part that "The exemption of the following property is as specified in Section 1 of Article XIII of the Constitution: . . . (c) *Property used exclusively for public schools.*" (Italics added.)

showing that they clearly come within the terms of the exemption (*Cedars of Lebanon Hosp.* v. *County of L. A.* (1950) 35 Cal.2d 729, 734 [221 P.2d 31, 15 A.L.R.2d 1045]). ██ But the rule of strict construction does not require that the narrowest possible meaning be given to words descriptive of the exemption, for a fair and reasonable interpretation must be made of all laws with due regard for the ordinary meaning of the language employed and the object sought to be accomplished thereby. Strict construction must still be a reasonable construction (*Church Divinity Sch.* v. *County of Alameda* (1957) 152 Cal.App.2d 496, 500 [314 P.2d 209]; *Cedars of Lebanon Hosp.* v. *County of L. A., supra* at p. 735; *Multnomah School of the Bible* v. *Multnomah County* (1959) 218 Ore. 19 [343 P.2d 893, 897]).

██ Under the rule of strict but reasonable construction the phrase "exclusively used" may not be given a literal interpretation so as to mean that the property exempted must be used only, solely and purely for the purposes stated to the total exclusion of any other use. Rather, the expression "exclusively used" has been interpreted to mean not only primary but also certain types of incidental use as well. However, contrary to appellant's position, in order to secure tax exemption based on "incidental use," such *incidental use must be directly connected with, essential to, and in furtherance of the primary use* (84 C.J.S., § 287, p. 579; *Salvation Army* v. *Hoehn* (1945) 354 Mo. 107 [188 S.W.2d 826]) *and must be reasonably necessary for the accomplishment of the primary purpose for which the tax-exempt institution was organized (Greater N. Y. Corp. of 7th-Day A.* v. *Town of Dover* (1968) 29 App.Div.2d 861 [288 N.Y.S.2d 334, 336]; *Multnomah School of the Bible* v. *Multnomah County, supra* at p. 899).

The California cases are in full accord with the aforesaid premises. Thus, in *Cedars of Lebanon Hosp.* v. *County of L. A., supra,* interpreting the phrase "property used exclusively for . . . hospital . . . purposes" (Cal. Const., art. XIII, § 1c; Rev. & Tax. Code, § 214), our Supreme Court laid down the rule that the phrase in question should be held to include any property which is used exclusively for any facility which is *incidental to and reasonably necessary for the accomplishment of hospital purposes,* or in other words, for any facility which is *reasonably necessary for the fulfillment of a* generally *recognized function of a* complete modern *hospital.* In consonance with this principle, the court upheld the tax exemption of a nursing school attached to the hospital and a tennis court maintained as a recreational facility for hospital employees because both were deemed incidental and reasonably necessary for the accomplishment of hospital purposes. But the court took a different view with

regard to the hospital property used to house a thrift shop which sold donated clothing and furnishings, the proceeds of which were used for charitable purposes. The court said: "But such enterprise, laudable as its purpose manifests it to be, cannot escape classification as an independent undertaking to raise revenue, and it cannot be said to have been incidental to and reasonably necessary for the accomplishment of hospital purposes." (*Cedars of Lebanon Hosp.* v. *County of L. A., supra* at p. 745.)

The principles pronounced in *Cedars of Lebanon* were followed in *Church Divinity Sch.* v. *County of Alameda, supra,* an analogous case, where the court undertook to interpret the phrase "property 'used exclusively for . . . purposes of education'" within the meaning of California Constitution, article XIII, section 1a and Revenue and Taxation Code, section 203. Applying the test laid down in *Cedars of Lebanon,* the court sustained the tax exemption of college facilities used by married students and the faculty members, and a contiguous parking lot used by the students and staff members, concluding that *"property 'used exclusively for . . . purposes of education' includes any facilities which are reasonably necessary for the fulfillment of a* generally *recognized function of a* complete modern *college."* (*Church Divinity Sch.* v. *County of Alameda, supra* at p. 502; italics added.)

■ By contrast, in the case at bench the record conclusively shows that the use of the computer system for parochial schools and private businesses was not reasonably necessary to further the primary purpose of the public schools, but was merely a revenue generating device. Appellant's argument that we should grant a tax exemption for the use in question because the revenue received from the parochial schools and private business was applied to the rental cost of the computer and thereby reduced the amounts of funds required for payment of rental, is saliently lacking in any supporting legal authority. ■ It has been repeatedly said that it is the use of the property which renders it exempt or nonexempt, not the use of income derived from it. (*Cypress Lawn C. Assn.* v. *San Francisco, supra; Multonomah School of the Bible* v. *Multnomah County, supra* at p. 903.) As the court put it in *Y.M.C.A.* v. *County of L. A.* (1950) 35 Cal.2d 760, 774-775 [221 P.2d 47]: "But conceding the praiseworthy motives underlying the establishment of these respective facilities as outlined by plaintiff, it must be remembered that the test for the . . . exemption is not the number of good purposes to which plaintiff's property may be put nor the amount of benefit that may be derived therefrom by plaintiff's members as well as the general public, but whether the property may reasonably be regarded as

'exclusively used' for exempt purposes. . . . That the money derived therefrom may be used exclusively for plaintiff's operational upkeep as a charitable organization [citation] or that such facilities may be desirable in the promotion of plaintiff's general service plan does not alter the fact that they involve the use of portions of plaintiff's property for facilities which are not merely incidental to and reasonably necessary for the accomplishment of exempt purposes." ▇ It follows that if the property of a tax-exempt institution competes in the common business with the property of other owners, it must bear the tax as much as theirs bears; and when it is used to raise money it becomes taxable. (*Rabun Gap-Nacoochee School* v. *Thomas* (1971) 228 Ga. 231 [184 S.E.2d 824, 829-830].)[5]

Appellant's reliance on *Ross* v. *City of Long Beach* (1944) 24 Cal.2d 258 [148 P.2d 649], is obviously misplaced. Unlike the instant case, in *Ross* the property leased to a school district by a private owner was used exclusively for public school purposes and was held tax exempt on that ground. In explaining why a sheer usage of property without a concomittant ownership should entitle the school district to a tax exemption, the Supreme Court pointed out that *the exemption of property used for public school purposes is not for the benefit of the private owner* who may rent them his property for said purpose, *but for the advantage of the school district* which may be compelled to rent property rather than to buy land and erect buildings thereon to be used for the maintenance of its school. *With this advantage the school district is able to rent property for a lower rental* than the owner of the same property would be willing to accept from a private individual, for the reason that if rented to a school district the owner is relieved from the payment of taxes thereon. (*Ross* v. *City of Long Beach, supra* at pp. 262-263.)

It is readily discernible that under the facts here present the above stated public policy would not be furthered by the granting of the claimed tax exemption to appellant. As spelled out before, pursuant to the lease agreement the County was entitled to the educational discount only if the leased property was used either for *internal* institutional purposes or *joint* instructional, academic and scientific programs. Although there is an allegation in the supporting affidavits that the material provided for the parochial schools was similar or identical to that

---

[5]Of incidental interest we note that the practice here followed by the County was disapproved by the Attorney General who in his opinion underscored that while a school district is permitted to furnish computer services utilizing unneeded time for other *public agencies* in the county (Ed. Code §§ 7411-7418), there is no statutory authority that computer services could be provided for nonpublic entities as well. (54 Ops.Cal.Atty. Gen. 139.)

processed for the public schools, the record is barren of any evidence that the furnishing of the processed material for parochial schools constituted a part of a joint instructional, scientific or academic program or project. As a consequence, the County was not *legally* entitled to the educational discount provided for in the contract. Under the circumstances, an eventual tax exemption on the leased property would not inure to the County, the intended beneficiary, but would benefit appellant, a private enterprise, which would be able to avoid the payment of taxes on the sole basis that it leased its property to a tax-exempt organization, without being required to grant the educational discount, the *quid pro quo* for the tax exemption.

Appellant's additional contentions that the computer system should be tax exempt because it was under the sole control of the County and operated exclusively by the County personnel, and that the income derived from the outside services was minimal, may be briefly disposed of. As emphasized before, the overriding consideration of whether the property qualifies for exemption is the use of the property, and not the control over it. At any rate, appellant was at liberty to include in the agreement any appropriate provisions which would have precluded the utilization of the computer system for any outside purpose. As far as appellant's second contention is concerned, suffice it to say that according to the uncontroverted evidence the income received from the parochial schools was $22,501.37 for 1967-1968, $22,446.83 for 1968-1969, $26,775.33 for 1969-1970, and $29,333.70 for 1970-1971, while income from the private firms for the same period amounted to $8,661.34, $2,094.60, $4,565.36 and $4,059.08, respectively. While these latter sums considered in isolation might well have fallen within the notion of de minimis, it requires no stretch of imagination to see that the aggregate sums deriving from both outside sources were far too large to qualify under that doctrine.

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.