[Civ. No. 38284. First Dist., Div. Two. May 31, 1977.]

SHARON J. ENGLISH et al., Plaintiffs and Appellants, v.
COUNTY OF ALAMEDA et al., Defendants and Respondents;
CALIFORNIA ASSOCIATION OF HOMES FOR THE AGING et al.,
Interveners and Respondents.

**COUNSEL**

Russell Bruno for Plaintiffs and Appellants.

Richard J. Moore, County Counsel, James E. Jefferis, Assistant County Counsel, Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, and Edward P. Hollingshead, Deputy Attorney General, for Defendants and Respondents.

William J. Bush, Duane B. Garrett, Hanson, Bridgett & Marcus, Hanson, Bridgett, Marcus, Milne & Vlahos, Merrill J. Schwartz, and Stark, Stewart, Simon & Sparrowe for Interveners and Respondents.

## OPINION

**KANE, J.**—This is an appeal from a judgment denying a petition for a writ of mandate.

Petitioners (appellants) are resident citizen-taxpayers who brought this class action on behalf of themselves and all other taxpayers similarly situated. Respondents are the Assessors and Counties of Alameda, Contra Costa, Los Angeles, Marin, Orange, San Bernardino, San Diego, San Francisco, Santa Barbara, San Mateo and Santa Clara, and the State Board of Equalization. The Hospital Association of Northern California, the California Hospital Association, and the California Association of Homes for the Aging participate in the action as intervening parties.

The petition sought to compel respondents to identify, appraise and assess the tenancies or other possessory interests of certain employees and beneficiaries (i.e., hospital and college administrators, professors, doctors, nurses, aged persons) who occupy quarters or use property owned by tax-exempt colleges, universities, hospitals and other non-profit organizations. It was stipulated by the parties that each category of the above institutions is properly exempt from property taxation either under California Constitution (Const.), article XIII, section 4, subdivision (b) (formerly § 1c) and Revenue and Taxation Code (Rev. Code) sections 214-214.9 (welfare exemption) or Const., article XIII, section 3, subdivision (e) (formerly § 1a) and Rev. Code, section 203 (college exemption). It was likewise stipulated that the occupancies or other property uses at issue are incidental to and reasonably necessary for the accomplishment of the charitable purposes upon which the exempt status of the property is predicated.

Based upon the stipulated facts, the trial court found that "2. [S]eparately definable property interests exist but are not subject to taxation as possessory interests, or otherwise, arising from the occupancy, by persons described in the stipulation of the parties, of property made exempt from ad valorem taxation pursuant to Section 4(b) (formerly Section 1c) of Article XIII of the California Constitution and Section 214 of the Revenue and Taxation Code (the welfare exemption).

"3. [S]eparately definable property interests exist but are not subject to taxation as possessory interests, or otherwise, arising from the occupancy, by persons described in the stipulation of the parties, of

property made exempt from ad valorem taxation pursuant to Section 3(e) of Article XIII of the California Constitution (the present college exemption).

"4. In respect to property made exempt from ad valorem taxation pursuant to former Section 1a of Article XIII of the California Constitution (the former college exemption), which was repealed effective November [5], 1974, there were definable property interests subject to taxation, as possessory interests, arising from the occupancy, by persons described in the stipulation of the parties, of such college-exempt property; the imposition of assessments in respect to such property interests would be of no practical benefit to petitioners because of the insubstantiality òr *de minimis* nature of the net tax revenues which would be realized."

The trial court concluded that none of the persons described in the stipulation were subject to ad valorem taxation by reason of. their occupancy of either welfare or college exempt property, and accordingly denied the petition for mandate.

Thus, the fundamental issue is clearly in focus, namely whether a separate taxable property interest may be said to exist in property which is concededly entitled to either the welfare or college exemption when the use of the property is incidental to or reasonably necessary for the accomplishment of the exempt purpose.

Appellants contend that the conclusion reached by the trial court is erroneous, arguing that the occupancy or other use of tax exempt property by private individuals should be subject to ad valorem taxation. Appellants' logic runs as follows: (1) unless otherwise provided by the Constitution or statute, as a general rule all property is taxable (Const., art. XIII, § 1); (2) possessory interests in land or improvements are a species of real property (Rev. Code, §§ 103-107; *Kaiser Co.* v. *Reid* (1947) 30 Cal.2d 610, 618 [184 P.2d 879]), which are not explicitly exempted from taxation; (3) the occupancy or other use of the tax exempt property by the individuals described in the stipulation constitute separately definable possessory interests which substantially subserve an independent, private interest of the user or occupier (*United States of America* v. *County of Fresno* (1975) 50 Cal.App.3d 633, 638 [123 Cal.Rptr. 548]); ergo (4) such possessory interests as a matter of law ought to be made taxable to the private individuals, even if the property

is properly exempt to the particular college, hospital or other charitable institution (cf. *Mattson* v. *County of Contra Costa* (1968) 258 Cal.App.2d 205 [65 Cal.Rptr. 646]; *McCaslin* v. *DeCamp* (1967) 248 Cal.App.2d 13 [56 Cal.Rptr. 42]; *Rand Corp.* v. *County of Los Angeles* (1966) 241 Cal.App.2d 585 [50 Cal.Rptr. 698]; *Kaiser Co.* v. *Reid, United States of America* v. *County of Fresno,* both *supra*).

To put it in more basic terms, appellants advocate the adoption of a so-called dual-use theory under which property used for the exclusive purpose of tax-exempt charitable institutions would be excepted from taxation as to the institutions, but would be subject to an ad valorem tax as to the private individuals who, while occupying or using the tax exempt property for the fulfillment of recognized charitable purposes, also utilize it for their own private end and benefit as well. In countering these arguments, respondents and interveners maintain that the position advanced by appellants is totally unsupported by the Constitution and the statutes enacted pursuant thereto, and is in sharp conflict not only with the case law expanding on and interpreting the scope and meaning of the legislative enactments concerning the welfare and college exceptions, but also with the notion of "exclusive use" as defined in established judicial opinions. Even more significantly it is contended that the eventual adoption of appellants' theory would fly directly in the face of a public policy which favors tax-exempt status for charitable institutions and would frustrate the very policy goal the promotion of which was intended by granting such exemption. We agree with respondents and interveners and affirm the judgment for the reasons which follow.

*Welfare Exemption*: Since our primary task is to interpret the pertinent provisions of the California Constitution and the legislative enactments adopted pursuant thereto, initially we set out the general rules governing statutory construction. ■ As emphasized time and again, the fundamental rule of statutory interpretation is to ascertain the intent of the Legislature so as to effectuate the purpose of the law (*County of Alameda* v. *Kuchel* (1948) 32 Cal.2d 193, 199 [195 P.2d 17]). Statutes should be given a reasonable interpretation in accordance with the apparent purpose and intention of the lawmakers (*Freedland* v. *Greco* (1955) 45 Cal.2d 462, 467 [289 P.2d 463]). The legislative intent may be ascertained not only by considering the words used, but also by taking into account other matters as well, such as the object in view, the evils to be remedied, the legislative history, public policy and contemporaneous administrative

construction (*Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110]; see also *DiGiorgio Fruit Corp.* v. *Dept. of Employment* (1961) 56 Cal.2d 54, 61-62 [13 Cal.Rptr. 663, 362 P.2d 487]; *Mudd* v. *McColgan* (1947) 30 Cal.2d 463, 470 [183 P.2d 10]; *Estate of Jacobs* (1943) 61 Cal.App.2d 152, 155 [142 P.2d 454]). ■ The rules concerning the interpretation of tax exemption enactments emphasize that constitutional provisions and statutes granting exemption from taxation as a general rule are strictly construed to·the end that such concession will neither be enlarged nor extended beyond the plain meaning of the language employed. However, the rule of strict construction does not require that the narrowest possible meaning be given to the exempting language, for a fair and reasonable interpretation must be made of all laws with due regard for the ordinary acceptance of the language employed and the object sought to be accomplished. To put it tersely: *strict construction must still be a reasonable construction (Cedars of Lebanon Hosp.* v. *County of L. A.* (1950) 35 Cal.2d 729, 734-735 [221 P.2d 31, 15 A.L.R.2d 1045]; *Y. M. C. A.* v. *County of L. A.* (1950) 35 Cal.2d 760, 767 [221 P.2d 47]; *Fredericka Home* v. *County of San Diego* (1950) 35 Cal.2d 789, 792 [221 P.2d 68]; *Church Divinity Sch.* v. *County of Alameda* (1957) 152 Cal.App.2d 496, 502 [314 P.2d 209]).

With these principles in mind, we first proceed·to review the pertinent constitutional and statutory provisions. Const., article XIII, section 1, prescribes that *"Unless otherwise provided by this Constitution* or the laws of the United States: [¶] (a) *All property is taxable* and shall be assessed at the same percentage of, fair market value. When a value standard other than fair market value is prescribed by this Constitution or by statute authorized by this Constitution, the same percentage shall be applied to determine the assessed value. The value to which the percentage is applied, whether it be the fair market value or not, shall be known for property tax purposes as the full value. [¶] (b) All property so assessed shall be taxed in proportion to its full value." (Italics added.)

■ Since the plain meaning of the quoted section is that in California all property is subject to taxation unless excepted by the law, we next turn to the constitutional language which defines the scope and extent of the welfare exception. Const., article XIII, section 4,[1] provides

---

[1]Prior to November 5, 1974, Const., article XIII, section 1c (the forerunner of the present § 4, subd. (b)), provided that "In addition to such exemptions as are now provided in this Constitution, the Legislature may exempt from taxation *all or any portion of property* used exclusively for religious, hospital or charitable purposes and owned by community chests, funds, foundations or corporations organized and operated

in part that "The Legislature may exempt from property taxation *in whole or in part*: . . . [¶] (b) *Property used exclusively* for religious, hospital, or charitable purposes *and owned* or held in trust by corporations or other entities (1) that are organized and operating for those purposes, (2) that are non-profit, and (3) no part of whose net earnings inures to the benefit of any private shareholder or individual." (Italics added.)

In the execution of the constitutional mandate, the Legislature enacted Rev. Code, section 214, which provides in inclusive terms that *property* used exclusively for religious, hospital, scientific, or charitable purposes owned and operated by community chests, funds, foundations or corporations organized and operated for religious, hospital, scientific, or charitable purposes is exempt from taxation if the conditions set out in the section have been met.

In deciphering the meaning of the word "property," which plays a crucial role in ascertaining the legislative intent and defining the scope of welfare exemption, we take recourse to the statute itself. By statutory definition, *"property" includes all matters* and things, real, personal, and mixed, *capable of private ownership* (Rev. Code, § 103). "Real estate" or "real property" comprises inter alia the possession of, claim to, ownership of, or right to the possession of land and improvements (Rev. Code, § 104, subds. (a) and (c)). "Improvements" encompass buildings, structures, fixtures and fences erected on or affixed to the land (Rev. Code, § 105, subd. (a)). Possessory interests as defined by the statute mean: "(a) Possession of, claim to, or right to the possession of land or improvements, except when coupled with ownership of the land or improvements in the same person. [¶] (b) Taxable improvements on tax-exempt land." (Rev. Code, § 107.)

█ It thus clearly appears that the possessory interests existing in land or improvements constitute but a part or ingredient of the property, and the latter as a broader notion includes by definition the possessory interests as well. Therefore, giving a plain meaning to the language used in the statute, as we must, the word "property" must be deemed to

---

for religious, hospital or charitable purposes, not conducted for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual. As used in this section, 'property used exclusively for religious, hospital or charitable purposes' shall include a building and its equipment in the course of construction on or after the first Monday of March, 1954, together with the land on which it is located as may be required for the use and occupation of the building, to be used exclusively for religious, hospital or charitable purposes." (Italics added.)

encompass the totality of rights composing property, including possessory interests.

The conclusion that, by using the word "property" in the statute, the Legislature intended to extend the welfare exemption to the aggregate of property rights is further underlined by the circumstance that pursuant to the cited constitutional provisions the Legislature was empowered to exempt *all or any portion* of property used exclusively for charitable purposes and owned by the qualifying charitable organizations. By employing the all-inclusive term of "property" without any limitation or restriction in Rev. Code, section 214, the Legislature expressed its intent that the tax exemption accorded charitable organizations should include not only parts or fractions, but the entirety of the property rights. Consequently, appellants' contention that taxable possessory interests may exist in welfare exempt property must fail, in the first place, as a matter of statutory construction.

Additionally, it bears emphasis that one of the most important conditions of obtaining a welfare exempt status is that the property owned by the charitable institution be used exclusively for religious, hospital, scientific or charitable purposes (Const., art. XIII, § 4, subd. (b); Rev. Code, § 214). The courts have consistently held that "exclusive use" includes any property of the charitable organization which is used exclusively for any facility which is *incidental to and reasonably necessary for the accomplishment of the charitable purpose (Cedars of Lebanon Hosp.* v. *County of L. A., supra,* 35 Cal.2d 729, 736; *Y. M. C. A.* v. *County of L. A., supra,* 35 Cal.2d 760, 767; *Fredericka Home* v. *County of San Diego, supra,* 35 Cal.2d 789, 795; see also *Serra Retreat* v. *County of L. A.* (1950) 35 Cal.2d 755 [221 P.2d 59]; *Fifield Manor* v. *County of Los Angeles* (1961) 188 Cal.App.2d 1 [10 Cal.Rptr. 242]).

■ The extensive judicial interpretation of the phrase "exclusive use" carries an overriding significance in the case at bench. Reduced to simplest terms, it means that even if the use of certain property is only incidental or reasonably necessary to attain the charitable goal and, therefore, at least in the every day sense of the word, does not foreclose some additional or complementary use on the part of certain authorized private individuals (the very type of use alleged by appellants here), *for the purpose of property taxation* such incidental or reasonably necessary use must be and is considered as an exclusive use which calls for exemption from ad valorem taxation both under the Constitution and

the statute. To be sure, appellants here explicitly admitted and stipulated to the fact that the charitable institutions involved in this case have been properly exempted from property taxation and that the occupancy or other use at issue is incidental to and reasonably necessary for the accomplishment of the designated charitable purposes.[2] Since the incidental and reasonably necessary use is tantamount to "exclusive use" within the meaning of the law, and since the notion of "exclusive use" conceptually rules out any other use, appellants' suggestion that property tax should be imposed on a legally exempted and conceptually inconceivable type of use must be categorically rejected.

[2]The pertinent parts of the record read as follows:

"2. At all times relevant to the within proceedings *elderly persons and staff personnel have been and now are occupying property* located in respondent counties, including without limitation the property set forth in subparagraphs a, b and c hereinbelow, which property has been and now is owned ·by funds, foundations or corporations organized and *operated exclusively for the charitable purposes* of providing the special care and attention required by aged persons, including without limitation the entities set forth in subparagraphs a, b and c hereinbelow. *Said property so owned has been and now is properly exempted from property taxation* by virtue of the filing of claims of exemption and qualification pursuant to California Constitution, Article XIII, § 1c, and Revenue and Taxation Code § 214; *the occupancy thereof by said elderly persons and staff personnel is incidental to and reasonably necessary for ·the accomplishment of the charitable purpose* upon the basis of which said welfare exempt status of said property is predicated. . . ." (Italics added.)

"3. At all times relevant to the within proceedings *hospital employees and staff members, including* but not limited to *registered nurses, student nurses, licensed vocational nurses, housekeepers, interns, residents, maintenance engineers,· dietary and administrative personnel have been occupying property* located in respondent counties which property has been and now is owned by funds, foundations or corporations *organized and operated exclusively for hospital purposes, which property has been and now is properly exempted from property taxation* by virtue of the filing of claims of exemption and qualification pursuant to California Constitution, Article XIII, § 1c, and Revenue and Taxation Code § 214. *Such occupancy is incidental to and reasonably necessary for the accomplishment of the hospital purpose* upon the basis of which said welfare exempt status of said property is predicated. . . ."

"At all times relevant to the within proceedings *hospital-based physicians specialists in pathology, radiology, electro-cardiology, electro-encephalography and emergency care have been occupying property* located in respondent counties *which property has been and now is* owned by funds, foundations or corporations *organized and operated exclusively for hospital purposes, which property has been and now is properly exempted from property taxation* by virtue of the filing of claims of exemption and qualification pursuant to California Constitution, Article XIII, § 1c, and Revenue and Taxation Code § 214. *Such occupancy is incidental to and reasonably necessary for the accomplishment of the hospital purpose* upon the basis of which said welfare exempt status of said property is predicated. . . ."

"4. At all times relevant to the within proceedings *individual college and university officers, faculty members, administrators, staff members, and students have been and now are occupying property* located in respondent counties *which property has been and now is* owned by colleges and .universities, other than public colleges and universities, *organized and operated exclusively for college purposes, which property has been and now is properly exempted from property taxation* by virtue of the filing of claims of exemption and

Despite the unmistakable message deducible from the foregoing reasoning, appellants still insist that the possessory interests regulated in Rev. Code, section 107, ought to be held independently taxable to the private user or occupier of the charitable property. In support of their argument, appellants refer to a long line of cases which hold that private possessory interests in publicly owned tax exempt lands are subject to ad valorem taxation as to the private lessee or other possessor of usufructuary rights (*State of California* v. *Moore* (1859) 12 Cal. 56; *People* v. *Shearer* (1866) 30 Cal. 645, 657; *San Pedro etc. R.R. Co.* v. *Los Angeles* (1919) 180 Cal. 18 [179 P. 393]; *Texas Co.* v. *County of Los Angeles* (1959) 52 Cal.2d 55 [338 P.2d 440]; *Kaiser Co.* v. *Reid, supra,* 30 Cal.2d 610; *Rand Corp.* v. *County of Los Angeles, supra,* 241 Cal.App.2d 585; *Mattson* v. *County of Contra Costa, supra,* 258 Cal.App.2d 205; *United States of America* v. *County of Fresno, supra,* 50 Cal.App.3d 633). Appellants fail to perceive any tangible difference between tax exempt public land and tax exempt welfare property, and seriously urge us to apply the legal principles evolved with respect to possessory interests in public land to those existing in the tax exempt property of the charitable institutions. Appellants' position must be rejected for a variety of reasons.

■ To begin with, the Constitution and case law indicate that the sole basis of the tax exemption of public land is the *ownership* of the property, and the use to which the property is put is neither a legal element nor a prerequisite of the grant of exemption (Const., art. XIII, § 3, subds. (a) and (b) (formerly § 1); *Anderson-Cottonwood I. Dist.* v. *Klukkert* (1939) 13 Cal.2d 191, 199 [88 P.2d 685]). Since the public policy underlying the tax exemption in the public land cases is to secure the tax privilege to the government alone, the automatic extension of the tax exemption to the private users of public land who have obtained and enjoy substantial possessory interests therein is not required either as a matter of law or public policy. Indeed, since as early as 1859 it has been

qualification pursuant to California Constitution, Article XIII, § 1a, and Revenue and Taxation Code § 203. . . ."
"5. At all times relevant to the within proceeding *individual private persons other than those hereinabove enumerated have been* and now are *occupying property* located in respondent counties which property has been and now is owned by community chests, funds, foundations, or corporations, other than those hereinabove described; *organized and operated exclusively for religious or charitable purposes, which property has been and now is properly exempted from property taxation* by virtue of the filing of claims of exemption and qualification pursuant to California Constitution, Article XIII, § 1c, and Revenue and Taxation Code § 214. *Such occupancy is incidental to and reasonably necessary for the accomplishment of the religious or charitable purposes* upon the basis of which said welfare exempt status of said property is predicated. . . ." (Italics added.)

consistently held that private possessory interests in public land are proper subjects of ad valorem taxation and that the privilege carved out to the government on account of its ownership should not inure to the benefit of a private individual who enjoys a wide range of usufructuary rights in, and reaps substantial benefits from, the usage of public property (*State of California* v. *Moore, supra,* 12 Cal. 56, 70; *People* v. *Shearer, supra,* 30 Cal. 645, 656-657; *San Pedro etc. R.R. Co.* v. *Los Angeles, supra,* 180 Cal. 18, 20-22). ■ By contrast, the tax exemption of welfare property is predicated not only upon the legal ownership, but also upon the nature of *use* to which the property has been put. In fact, it clearly appears from the cases dealing with welfare exemption disputes that in granting or denying welfare exempt status the overriding consideration is whether the property is used exclusively for the purpose for which the tax exemption is claimed. It follows that where, as here, it is established that the property is owned by charitable institutions and used exclusively for the exempt purpose, the legal conditions of granting the tax exemption have been met (*Estate of Bendheim* (1950) 100 Cal.App.2d 398, 401 [223 P.2d 874]).

Second, and aside from the explicit language of the statute, appellants' novel proposition is not supported by public policy considerations either. ■ The cases in point make it abundantly clear that the tax exemption granted to charitable organizations is provided not only for the well-being of the immediate beneficiaries of the institutions (e.g., elderly persons in homes for the aging; occupiers of student and faculty residences and dormitories on college campuses; patients of hospitals), but also for the benefit of the public at large. As we put it in *John Tennant Memorial Homes, Inc.* v. *City of Pacific Grove* (1972) 27 Cal.App.3d 372, 382 [103 Cal.Rptr. 215], "*The fundamental basis for all exemptions in favor of charitable institutions is the benefit conferred* by them *on the public* and the consequent relief of the burden on the state to care for and advance the interests of its citizens." (Italics added. Accord: *Fifield Manor* v. *County of Los Angeles,· supra,* 188 Cal.App.2d 1, 20.) In amending Rev. Code, section 214 in 1968, the Legislature also expressed the idea that the grant of property tax exemption to charitable institutions is of benefit to the state itself. The pertinent portion of the declaration of intent reads as follows: "If obligated to pay taxes on this property, the purpose for which these nonprofit corporations have been established—to provide low-cost rentals to elderly and handicapped families—will be .defeated, as the amount of tax added to the rent payments will make such rental units too expensive for the families

which need them most. This act will remedy the situation by, in effect, making clear that the Legislature intends that the welfare exemption from property taxation shall apply to such property. *In so doing, the public policy of the state,* as expressed in Section 1c of Article XIII of the Constitution *will be fulfilled and the state as a whole will benefit.*" (Stats. 1968, ch. 645, § 4; italics added.) In light of these principles, it becomes increasingly manifest that an eventual imposition of property tax on the occupancy or use of private individuals whose work is an important ingredient of, and contributory factor to, the proper functioning of the charitable institution would in the last analysis cast the burden on the institution itself and thereby would seriously hamper, if not frustrate, the charitable goal (i.e., service of the public as the ultimate beneficiary) for whose promotion the tax exemption was granted in the first place.

Third, in accordance with the legislative intent, the underlying public policy and the longstanding judicial interpretation of the charitable property exemption provisions of the Constitution and the statute, respondent Board of Equalization promulgated regulations which at the relevant time and in pertinent part stated as follows: " *'Taxable possessory interest'* means a possessory interest in nontaxable publicly owned real property,* as such property is defined in section 104 of the Revenue and Taxation Code, and in taxable publicly owned real property subject to the provisions of sections 1 and 1.60 through 1.68, Article XIII, of the Constitution." (Tit. 18, Cal. Admin. Code, § 21, subd. (b); italics added.) This is in accord both with the definition laid out in *Pacific Grove-Asilomar Operating Corp.* v. *County of Monterey* (1974) 43 Cal.App.3d 675, 683 [117 Cal.Rptr. 874], and that given in the Assessor's Handbook, promulgated pursuant to Rev. Code, section 401.5. The latter also reaffirms that "The term possessory interest as it is used in property taxation in California includes either the possession or the right to possession of real estate, title to which is held by a *tax-exempt public agency.*" (Italics added; Cal. Assessors' Handbook 517 (April 25, 1961) p. 11; see also 517 (Feb. 1968) p. 5.) ■ It is, of course, well recognized that the administrative construction of the statute along with consistent administrative practice are entitled to great weight and constitute a significant factor in ascertaining the meaning of the legislative enactment (*Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 92-93 [130 Cal.Rptr. 321, 550 P.2d 593]; *DiGiorgio Fruit Corp.* v. *Dept. of Employment, supra,* 56 Cal.2d 54; *Mudd* v. *McColgan, supra,* 30 Cal.2d 463).

Finally, it is to be emphasized that the very issue raised by appellants here (i.e., whether possessory interests in welfare exempt property may be separately taxed to the individual user) has been presented both for legislative and judicial consideration and decided adversely to appellants. Thus, it has been shown that as far back as 1968, an attempt was made to impose an occupancy tax ("room tax") on the residents of welfare exempt homes for the aging, while at the same time preserving the tax exempt status to the home proper. Assembly Bill No. 1366,[3] introduced in 1969, which proposed the above noted occupancy tax, however, died in committee. Needless to say legislative developments are not without legal significance in determining the all-important question of legislative intent. The plausible inference to be drawn from the legislative inaction is that the question of the occupancy tax at issue was considered, but was impliedly rejected by the Legislature (cf. *Natural Resources Defense Council, Inc.* v. *Arcata Nat. Corp.* (1976) 59 Cal.App.3d 959, 973 [131 Cal.Rptr. 172]). More to the point, the question of whether possessory interests in welfare exempt property may be taxed to the individual users was before us in *John Tennant Memorial Homes, Inc.* v. *City of Pacific Grove, supra,* 27 Cal.App.3d 372. In that case, a city ordinance purported to impose tax on the occupiers of retirement homes which were exempt from property tax pursuant to Rev. Code, section 214. The defendant city advanced the same argument as appellants here, namely that the ordinance intended to tax not the owners of the exempt home itself, but only the retirees of the home who occupied rooms for their own personal use. By rejecting the argument of the city and holding that the ordinance was invalid, we first observed that the ordinance in question exacting occupancy tax upon the inhabitants was "in direct and irreconcilable conflict with the exemption as interpreted and construed by the courts" (p. 383). Next, we pointed out that the approval of the ordinance would frustrate the very purpose of exemption, by stating: "*The tax* imposed by the ordinance here is expressly designed to and *applies* only *to* persons who are *beneficiaries of the welfare exemption.* The ordinance attempts to recover for the City the amount of tax money that has been lost because of the retirement home tax exempt status. *Thus, the purpose of the ordinance exactly and precisely nullifies and frustrates the state welfare exemption of Revenue and Taxation Code section 214 and section 1c of article XIII of the state Constitution.*" (P. 385; italics added.) Finally, in disposing of the city's argument that the imposition of the

---

[3]Assembly Bill No. 1366 as amended in 1969 provided that "*The board of supervisors* of any county or city and county *may levy a possessory interest tax on the occupancy of a room* or rooms *in a home for the aged* described in Section 222 of the Revenue and Taxation Code. . . ." (Italics added.)

occupancy tax was justified under Rev. Code, section 107, we remarked that: "The City's citation of Revenue and Taxation Code section 107 relating to the possessory interest tax paid by an occupant where tax exempt property is used *for non-tax exempt purposes* is likewise misplaced." (P. 385.)

We note in passing that the cases cited by appellants all deal with different factual situations (i.e., where possessory interests in *publicly owned* land were held taxable) and are, therefore, not controlling in the case at bench. It bears special emphasis that *United States of America* v. *County of Fresno, supra,* 50 Cal.App.3d 633, upon which appellants primarily rely, also involves the issue of whether federal employees occupying dwellings built on government owned forest property could be held liable for property tax under Rev. Code, section 107. While holding that such employees were properly subjected to ad valorem property taxation, the court reiterated the long established rule by stating: "Generally speaking, a possessory interest includes the right of a private individual or corporation to use *government-owned tax exempt land* or improvements, and this right is considered a private interest taxable by the state and its taxing agencies" (p. 638; italics added). At the same time the court underlined that not all occupancies or uses of tax exempt government lands or improvements by private individuals were taxable as possessory interests. To give rise to a taxable possessory interest, continued the court, the right of possession or occupancy must be more than a naked possession or use; it must substantially subserve an independent, private interest of the user or occupier (p. 638). It is thus clear that the latter language, repeated innumerable times by appellants, was used in *County of Fresno* in order to limit rather than extend the tax liability of individuals possessing usufructuary rights in public property.

*College Exemption:* The college exemption is contained in Const., article XIII, section 3, which provides in part that "The following are exempt from property taxation: . . . [¶] (e) Buildings, land, equipment, and securities *used exclusively for educational purposes* by a nonprofit institution of higher education."[4] (Italics added.)

In carrying out the constitutional mandate, Rev. Code, section 203, sets out that "The college exemption is as specified in subdivision (e) of

[4]Prior to the November 5, 1974 amendment, former section 1a provided in part that "Any educational institution of collegiate grade within the State of California, not conducted for profit, shall hold exempt from taxation its buildings and equipment, its ground within which its buildings are located, its securities and income *used exclusively for the purposes of education.*" (Italics added.)

Section 3 and Section 5 of Article XIII of the Constitution. [¶] An educational institution of collegiate grade is an institution incorporated as a college or seminary of learning under the laws of this state, which requires for regular admission the completion of a four-year high school course or its equivalent, and confers upon its graduates at least one academic or professional degree, based on a course of at least two years in liberal arts and sciences, or a course of at least three years in professional studies, such as law, theology, education, medicine, dentistry, engineering, veterinary medicine, pharmacy, architecture, fine arts, commerce, or journalism. [¶] An educational institution of collegiate grade is not conducted for profit when it is conducted *exclusively for* scientific or *educational purposes* and no part of its net income inures to the benefit of any private person." (Italics added.)

While it is apparent that the language of the Constitution and the statute providing for college exemption is not identical to that governing the welfare exemption, the all-important criterion of the privilege, namely that the specified property be used exclusively for the exempt purpose, is the same. It is likewise evident that the courts, in interpreting the college exemption, have construed the phrase "used exclusively" consistently with the interpretation rendered in the welfare exemption cases. Thus, in *Church Divinity Sch.* v. *County of Alameda, supra,* 152 Cal.App.2d 496, the court was invited to decide whether certain college properties (family residences occupied rent free by faculty members, apartment houses occupied by married students, student parking lot) were exempt from ad valorem property taxation. In holding that the properties specified above should be held immune from property tax, the court cited the welfare exemption cases (*Cedars of Lebanon Hosp.* v. *County of L. A., Fredericka Home* v. *County of San Diego, Y. M. C. A.* v. *County of L. A.,* all *supra*), and by compelling analogy concluded that the property " 'used exclusively for . . . purposes of education' " should include any facilities which are reasonably necessary for the fulfillment of a generally recognized function of a complete modern college. (P. 502.)

We note incidentally that our conclusion that the tax exemption should turn on the *use* of the property for the tax exempt purpose is further corroborated by *Ross* v. *City of Long Beach* (1944) 24 Cal.2d 258 [148 P.2d 649], a case dealing with the college exemption. In *Ross,* the property used for school purposes was leased to the school by a private owner, and the primary issue was whether the owner was immune from

property taxation. Although ownership is unquestionably a part of real property as much as possessory interests (Rev. Code, § 104), and in many respects it constitutes a far more valuable right than a mere usufructuary privilege, the court held that due to the fact that the leased property was used exclusively for public school purposes the owner was immune from property taxation. The court expressed the basic rationale of its holding as follows: "Evidently the *framers of the Constitution in making the exception in favor of property used exclusively for public school purposes had in mind the great benefits derived from our educational institutions and desired to relieve them from the burden of taxation.* The history of this state shows that it has been the steadfast policy of the people of the state to encourage in every possible way the cause of education. *The exemption of property used for public school purposes is* not for the benefit of the private owner who may rent his property for said purpose, but *for the advantage of the school district* that may be compelled to rent property rather than to buy land and erect buildings thereon to be used for the maintenance of its school. *With this advantage the school district is able to rent property for a lower rental* than the owner of the same property would be willing to accept from a private individual, *for the reason that if rented to a school district the owner is relieved from the payment of taxes thereon.*" (Pp. 262-263; italics added.)

In sum, we conclude that despite differing language in the constitutional and statutory provisions, the policy reasons that have been spelled out with regard to the taxability of possessory interests in welfare exempt property ought to be deemed equally applicable to possessory rights existing in college exempt property. Accordingly, we hold that similar to possessory interests in the property of welfare exempt institutions, the stipulated occupancies in college exempt property must be held exempt from ad valorem taxation regardless of the circumstance whether said college property had been made exempt prior to or after November 5, 1974.

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 28, 1977.