[No. B011702. Second Dist., Div. One. Mar. 27, 1986.]

ALPHA THERAPEUTIC CORPORATION, Plaintiff and Appellant, v. COUNTY OF LOS ANGELES et al., Defendants and Respondents.

266

**COUNSEL**

Musick, Peeler & Garrett, Kenneth A. Holland, J. Patrick Whaley and John H. Bauman for Plaintiff and Appellant.

De Witt W. Clinton, County Counsel, and Roberta M. Fesler, Senior Deputy County Counsel, for Defendants and Respondents.

OPINION

HANSON (Thaxton), J.—

INTRODUCTION

In this opinion we will refer to appellant Alpha Therapeutic Corporation as the plaintiff, and to the respondents (a county and several cities) as defendants.

The plaintiff's first amended complaint for refund of property taxes alleged five causes of action against one or more of the defendants, as listed below. The first cause of action asked for a refund of 1979-1980 property taxes from the County of Los Angeles and the City of Los Angeles. The second asked for a refund of 1980-1981 property taxes from the County of Los Angeles and from the cities of Los Angeles and South Pasadena. The third asked for a refund of 1981-1982 property taxes from the County of Los Angeles, and from the cities of Los Angeles, Compton, and South Pasadena. The fourth asked for a refund of 1982-1983 property taxes from the County of Los Angeles, and from the cities of Los Angeles, Compton, and Industry. The fifth cause of action asked for a refund of 1983-1984 property taxes from the County of Los Angeles, and from the cities of Los Angeles, Long Beach, Compton, and Industry.

The defendants answered by denying the allegations, and moved for judgment on the pleadings, on the ground that the first amended complaint failed to state facts sufficient to constitute a cause of action. The trial court granted the motion, with 30 days to serve and file an amended complaint. When plaintiff failed to serve and file an amended complaint, the trial court on February 6, 1985, entered an order of dismissal.

Plaintiff filed a timely appeal.

APPEALABILITY OF THE TRIAL COURT'S ORDER

■ The plaintiff appeals from an "order of dismissal." The Code of Civil Procedure section 581d, states: "All dismissals ordered by the court shall be in the form of a written order signed by the court and filed in the action and such orders when so filed shall constitute judgments and be effective for all purposes. . . ."

The court's order of dismissal "ordered and adjudged" that plaintiff take nothing by its complaint. As such it was "a final determination of the matter

in difference between the parties in the particular proceeding in which it was rendered." (*Orton* v. *Daigler* (1932) 120 Cal.App. 448, 450 [8 P.2d 161].) In its substance it constituted a final judgment, and so the appeal from the order of dismissal lies.

### STANDARD OF REVIEW

■ A motion for judgment on the pleadings has the purpose and effect of a demurrer, and a reviewing court tests it by the same rules. (*Colberg, Inc.* v. *State of California* (1967) 67 Cal.2d 408, 411-412 [62 Cal.Rptr. 401, 432 P.2d 3]; *Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670, 675-676 [138 Cal.Rptr. 338]; *Tiffany* v. *Sierra Sands Unified School Dist.* (1980) 103 Cal.App.3d 218, 224-225 [162 Cal.Rptr. 669].)

■ The reviewing court treats a demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187], citing *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].)

### FACTS

The plaintiff operates a business which collects and stores human blood plasma for medical purposes and manufactures pharmaceutical products from human blood plasma. The plaintiff uses items of personal property to manufacture and store this blood plasma and its derivatives.

The defendants, a county and several cities in Southern California, have levied and collected ad valorem property taxes against personal property which plaintiff owns and uses exclusively in its business.

Claiming that Revenue and Taxation Code section 33 exempted this personal property from taxation, the plaintiff filed claims for refunds of taxes paid for fiscal years 1979-1980 through 1983-1984. When these claims were denied, the plaintiff filed suit for the refund.

### ISSUE

Did the trial court erroneously rule that Revenue and Taxation Code section 33 does not exempt personal property used by plaintiff exclusively to collect, store and manufacture human blood plasma and pharmaceutical products manufactured for medical purposes?

## DISCUSSION

Revenue and Taxation Code section 33 provides that "Human whole blood, plasma, blood products, and blood derivatives, or any human body parts held in a bank for medical purposes, shall be exempt from taxation for any purpose."

The interpretation of this section is apparently a case of first impression. A number of well-settled rules of law apply in determining the scope of a tax exemption.

■   While taxing statutes are to be construed in favor of the taxpayer, exemptions are to be narrowly construed in favor of the state. (*Estate of Giolitti* (1972) 26 Cal.App.3d 327, 331 [103 Cal.Rptr. 38, 56 A.L.R.3d 1307].) Other cases state that statutory exemptions from taxation are to be strictly construed against the taxpayer. (*Garret Corp.* v. *State Board of Equal.* (1961) 189 Cal.App.2d 504, 509 [11 Cal.Rptr. 421].) As a corollary to these rules, doubt about the applicability of an exemption is resolved against that exemption. (*American Hospital Supply Corp.* v. *State Bd. of Equalization* (1985) 169 Cal.App.3d 1088, 1092 [215 Cal.Rptr. 744].) Finally, the taxpayer bears the burden of showing that he clearly comes within the exemption. (*Honeywell Information Systems, Inc.* v. *County of Sonoma* (1974) 44 Cal.App.3d 23, 27-28 [118 Cal.Rptr. 422].)

■   The plaintiff has argued that the court should reject a strict or narrow reading of a statutory exemption if it frustrates the beneficial purposes the Legislature intended to encourage by enacting the exemption. "[T]he rule of strict construction does not require that the narrowest possible meaning be given to words descriptive of the exemption, for a fair and reasonable interpretation must be made of all laws, with due regard for the ordinary acceptation of the language and the object sought to be accomplished thereby." (*Cedars of Lebanon Hosp.* v. *County of L.A.* (1950) 35 Cal.2d 729, 735 [221 P.2d 31, 15 A.L.R.2d 1045].)

Plaintiff also points to cases where the courts have gone beyond literal statutory language to effectuate a legislative purpose. This exception to the rule of strict or narrow interpretation of a statutory exemption may apply when a court finds that property owned by an institution engaged in tax-exempt activities is incidental to and reasonably necessary to accomplish that underlying exempt purpose. (*Cedars of Lebanon Hosp.* v. *County of L.A.*, *supra*, 35 Cal.2d 729, 745: tennis court held exempt as needed for the benefit of hospital employees; *English* v. *County of Alameda* (1977) 70 Cal.App.3d 226 [138 Cal.Rptr. 634]: professors using tax exempt college

property had an exempt possessory interest in that property; *Yttrup Homes v. County of Sacramento* (1977) 73 Cal.App.3d 279 [140 Cal.Rptr. 680]: privately owned warehouses leased to public school district exempt.)

Plaintiff urges that these "welfare exemption" and similar cases by analogy compel the conclusion that an ad valorem levy on personal property used to collect, store, and manufacture blood and blood derivative inventories taxes indirectly what the Legislature intended to exempt. For the court to uphold defendants' taxation of this personal property, plaintiff argues, would frustrate the Legislature's goal of encouraging the development of blood inventories and reducing the price of blood and blood derivatives.

We disagree for several reasons.

■ First, the statute itself contains no ambiguity, which is a prerequisite to any further judicial interpretation or clarification of its language. (*Smith v. Rhea* (1977) 72 Cal.App.3d 361, 365 [140 Cal.Rptr. 116]; *Wallace v. Department of Motor Vehicles* (1970) 12 Cal.App.3d 356, 360 [90 Cal.Rptr. 657].) Where statutory language clearly sets forth the exempted property, as section 33 does, judicial restraint prevents us from adding further property to the list of exempted items enumerated in that section. (*County of Madera v. Carleson* (1973) 32 Cal.App.3d 764, 768-769 [108 Cal.Rptr. 515]; *Ross v. City of Long Beach* (1944) 24 Cal.2d 258, 260 [148 P.2d 649]; *Cemetery Board v. Telophase Society of America* (1978) 87 Cal.App.3d 847, 858 [151 Cal.Rptr. 248], citing *Rudley v. Tobias* (1948) 84 Cal.App.2d 454, 458 [190 P.2d 984].) The Code of Civil Procedure section 1858 likewise admonishes and restrains judicial interpretation to this effect.

■ Second, the "welfare exception" cases, or those involving similar exemptions which plaintiff relies upon, do not provide a sufficiently close or useful analogy to the section 33 exemption. The "welfare exception," codified in Revenue and Taxation Code section 214, reads in part: "Property used exclusively for religious, hospital, scientific, or charitable purposes owned and operated by community chests, funds, foundations or corporations organized and operated for religious, hospital, scientific, or charitable purposes is exempt from taxation" if certain prerequisites are satisfied.

This language differs crucially from that in section 33. From the phrase "property used exclusively" has arisen a series of cases which interpret what property will qualify for exemption when that property is doubtfully connected to the enumerated purposes, or what constitutes use "exclusively" for exempted purposes. Exempted institutions may engage in a variety

of activities (some of which will be sufficiently related to the exempted purpose, and some of which may not be), or they may own property used for both exempt and nonexempt purposes.

Thus the cases involving the "welfare exception" or similar exemptions came up in two ways. On one hand, a question might arise about whether the use made of property owned by a hospital, educational, or charitable facility entitled it to exemption. (*Cedars of Lebanon Hosp.* v. *County of L.A.*, *supra*, 35 Cal.2d 729; *Yttrup Homes* v. *County of Sacramento*, *supra*, 73 Cal.App.3d 279; *Ross* v. *City of Long Beach*, *supra*, 24 Cal.2d 258.) On the other hand, a question might arise about whether property, concededly used for a beneficial purpose, was also being used for some other, nonbeneficial purpose, which mixed or nonexclusive use called its exemption into doubt. (*English* v. *County of Alameda*, *supra*, 70 Cal.App.3d 226, 232-233; *Honeywell Information Systems, Inc.* v. *County of Sonoma*, *supra*, 44 Cal.App.3d 23.)

The instant case presents neither an issue of use nor one of exclusivity. Neither does section 33 raise questions about charitable or beneficial purposes, the rationale for the section 214 and similar exemptions and often the source of interpretative difficulty and litigation to which it gave rise. (*Y. M. C. A.* v. *County of L.A.* (1950) 35 Cal.2d 760, 774-775 [221 P.2d 47].) Section 33 does not predicate its exemption upon any requirement of "exclusive use" for charitable or beneficial purposes. Instead, it simply lists certain substances which it exempts from taxation. The statute contains no all-inclusive term, "property"; the list is short and finite. Nor does it require "exclusive use" for a beneficial purpose; if a substance appears on the list, the statute exempts it from tax. The plaintiff mistakenly relies upon these cases, and they do not control here.

■ Third, plaintiff has not met its burden of showing why the exemption should be expanded to include the property at issue. Nor has plaintiff shown that such property clearly comes within the terms of the exemption. (*Cedars of Lebanon Hosp.* v. *County of L.A.*, *supra*, 35 Cal.2d 729, 734.) Plaintiff must overcome the rules of strict, narrow, and reasonable construction of tax exemption statutes (*Honeywell Information Systems, Inc.*, v. *County of Sonoma*, *supra*, 44 Cal.App.3d 23, 27-28), and of resolving doubt about the construction of those statutes against the right to exemption. This, however, plaintiff has failed to do.

Plaintiff argues that the tax exemption advantages businesses involved in collecting, storing, and producing blood and blood derivatives to encourage a vital public service—maintaining inventories of blood and blood deriva-

tives—which affects the public health and welfare. It does not follow, however, that in exempting these substances from taxation the Legislature intended likewise to exempt the businesses which trade in or process them.

The result plaintiff proposes suffers from lack of any limiting principle. It is not apparent why plaintiff's argument would not exempt businesses engaged in collecting, storing, or producing blood or blood derivatives from all taxation. Surely that would advantage them even further, and likewise encourage a vital public service. Just as personal property is necessary to collect, store, and process blood and blood derivatives, so are buildings to shelter them, vehicles to transport them, employees to process them, and licenses to keep the business in compliance with the law.

Yet those necessities do not excuse such a business from a variety of other taxes. It must pay property taxes on buildings; remit registration fees for vehicles; contribute to workers' compensation, unemployment insurance, or social security programs for employees; and purchase business licenses. All these expenses affect the size of inventories, the price, and the availability of blood and blood products. All constitute a form of taxation, and add to the costs incurred in operating plaintiff's business. Yet it is not claimed that plaintiff's business should be exempted from these various taxes, and rightly so. The statute exempts substances or products from taxation, not the business that collects, stores, or produces them.

Had the Legislature wished to include personal property in the list of exempted products, it could have easily done so. But as written, the statutory requirement is precise, the list finite, and the effect clear. We refuse plaintiff's invitation to enlarge the statute's ambit by judicial fiat.

## DISPOSITION

The ruling of the trial court is affirmed.

Spencer, P. J., and Lucas, J., concurred.