152

## BOWLES v. MADL et al.
### Civ. No. 4953.

District Court, D. Kansas, First Division.

April 16, 1945.

James B. Nash, Dist. Enforcement Atty., Lawrence J. Wetzel, Litigation Atty., and E. E. Sattgast, Enforcement Atty., all of Office of Price Administration, all of Wichita, Kan., for plaintiff.

A. J. Harrod, of Kansas City, Kan., for defendants.

VAUGHT, District Judge.

The plaintiff brings this action against the defendants alleging among other things that from and including June 25, 1943, to and including December 4, 1943, the defendants, dealers in farm equipment in Baldwin City, Douglas County, Kansas, sold and delivered farm equipment as follows to-wit:

One used Allis-Chalmers 1940 Model WC tractor to Ralph H. Pohl, on or about June 25, 1943, for the sum of $1050 when the maximum price permitted to be charged under the Regulation was $734.25.

One used 60 inch Allis-Chalmers all-crop harvester on rubber to Leonard Travelute, on or about December 4, 1943, for the sum of $500 when the maximum price permitted under the Regulation was $443.-50.

One used New-Idea two-row corn picker to Reed Carsten, on or about December 4, 1943, for the sum of $820 when the maximum price permitted under the Regulation was $616.25.

One 40 inch 1941 used Allis-Chalmers all-crop harvester to Harold Springer, on or about January 25, 1944, for the sum of $350 when the maximum price permitted under the Regulation was $280.

The plaintiff prays for treble damages on behalf of the United States pursuant to the provisions of Section 205(e) of the Emergency Price Control Act of 1942, 56 Stat. 23, 50 U.S.C.A. Appendix § 901 et seq., in the sum of $1938, or three times the amount of the excess sales price over and above the ceiling price.

The defendants, by leave of court granted, have filed their motion to dismiss as to paragraph 5, Count I, paragraph 1, Count III, and that portion of the prayer of the complaint which seeks for judgment in the sum above stated.

Section 205(e) of the Emergency Price Control Act, 50 U.S.C.A. Appendix § 925 (e), provided: "If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or

business may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater. * * * If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer is not entitled to bring suit or action under this subsection, the Administrator may bring such action under this subsection on behalf of the United States."

As amended by the Stabilization Extension Act ·of June 30, 1944, 58 Stat. 640, 50 U.S.C.A. Appendix § 925, Section 205(e) now provides: "If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the over-charge. * * * If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer either fails to institute an action under this subsection within thirty days from the date of the occurrence of the violation or is not entitled for any reason to bring the action, the Administrator may institute such action on behalf of the United States within such one-year period."

It is clear that since the acts alleged in the complaint were committed prior to June 30, 1944, the amendment would not apply but that the Act as it existed prior to June 30, 1944, would apply.

It is the contention of the defendants in their motion to dismiss that the Administrator of the Office of Price Administration has no power to bring this action, for if a right of action exists, it is a right belonging to the purchasers of the farm machinery above described and the action must have been instituted by them before the court would have jurisdiction.

The language of the statute, "the person who buys such commodity for use or consumption other than in the course of trade or business may bring an action", requires the court's attention. The consideration of this motion involves proper consideration of the phrase "for use or consumption" in connection with the phrase "in the course of trade or business."

It is admitted that the farm machinery in question was purchased by the farmers for their own use or consumption, but it is contended by the plaintiff that this use or consumption was in the course of trade or business, while the defendants contend that this use or consumption was for and by the ultimate consumer and was not used or consumed in the course of any trade or business.

"Use or consumption" are words which define themselves and "trade or business" are equally clear as to meaning. In ordinary parlance to use an article is to utilize or employ it for the purposes for which it was intended. For instance, to use a plow is to cultivate the ground with the plow. To use a wagon is to haul with the wagon or drive it for the purposes for which a wagon is ordinarily used. To use a refrigerator is to place it in one's home to preserve food and kindred articles. "Consumption" also might have a more immediate termination. For instance, if a farmer buys fertilizer and uses it on his crops, or seed corn and plants it, or wheat and sows it, or feed for his livestock and feeds it, or food for his family use and so uses it, it could be said that he consumes these articles on his farm. If his use of the plow, the wagon or the refrigerator depreciates the value of these articles until they no longer have value except for scrap iron, it could as reasonably be said that he has used or consumed these articles on his farm. On the other hand, if he purchased the plow, the wagon, the refrigerator, the fertilizer, the corn, the wheat, the feed, or the food to sell to some one else, no use or consumption would be involved and he would not be the ultimate consumer but would be engaged in a "course of trade or business."

Trade or business as used in the Act means buying, selling, exchanging, or handling articles in any manner for profit. Technically, it might be said that farming is a trade or business but the generally accepted designation is occupation. I see no reason why even if one were engaged in a trade or business and bought articles for use or consumption therein, he would not come under the use or consumption clause. The Act uses the phrase "course of trade or business," clearly indicating that it was the intention of Congress to recognize as one class those who use or consume as ultimate consumers, and as another class those who trade, traffic, exchange, buy or sell for

154

profit. Under the theory urged by the plaintiff, the farmer is engaged in a course of trade or business, and therefore any article that he might buy whether it be a pound of bacon, a loaf of bread, a pound of sugar, a plow, or any other article which he might use on the farm, could not be considered as used by the farmer as the ultimate consumer but must be considered as used in the course of trade or business.

The New York Supreme Court, in Lightbody v. Russell, 45 N.Y.S.2d 15, 16, said: "The complaint alleges that the plaintiffs in the capacity of ultimate consumer purchased the commodity in question, which was a Mack tractor. The purpose and intent of the statute are clear. Merchandise sold to an ultimate consumer such as the plaintiffs is a commodity bought for use and consumption and not in the course of business or trade. The plaintiffs are the proper and real parties in interest and authorized to bring this action."

In Bowles, Administrator, O.P.A., v. Joseph Denunzio Fruit Company, D.C. Ky., 55 F.Supp. 9, 13, the court, referring to the statute under consideration here, said: "* * * The provision is in no way ambiguous and needs no judicial construction to ascertain its meaning. Where a retailer sells to a purchaser for use or consumption the purchaser can sue for the damages authorized by the Act; but where a wholesaler sells to a retailer who buys for resale in the course of trade or business and not for use or consumption, such retailer has no authority to institute the suit, but the right of action in such cases is vested in the Administrator. * * *"

In Bowles, Administrator, O.P.A., v. Chew, D.C.Cal., 53 F.Supp. 787, 791, the court said:

"It is not subject to dispute that a 'person who buys * * * for use or consumption,' means, in the ordinary sense, the consumer, i.e. the general public buying over the counter, for its own use. In order that there might be no doubt that Congress intended this description to be in the ordinary sense, it added the excluding clause: 'other than in the course of trade or business.' Thus the tradesmen, i.e., merchants engaged in business, buying and selling between themselves, were not given the right to sue.

"It is clear to me that what Congress said and meant is that members of the general public who buy commodities, to use or consume themselves, may sue for treble damages, but that tradesmen, who deal and buy and sell between themselves in the course of business, may not sue one another.

"The rationale backgrounding this enforcement program is quite obvious. The consumer (member of the general using and consuming public) cannot in his daily life keep abreast of the ceiling prices of the countless articles on the market which he needs. He can easily be advantaged, since a small overcharge cannot readily be detected.

"* * * On the other hand, Congress clearly indicated that merchants and dealers, trading with one another, presumably for profit, should not engage in inter-commercial litigation to enforce the Act or prevent violations. Hence the right to sue for such violations was reserved to the Administrator, inasmuch as he has licensing authority under the Act, and may, by virtue of the record-keeping requirement (§ 202(b) [50 U.S.C.A. Appendix § 922(b)] readily assemble the data for enforcement."

The defendants cite the case of Brown, Price Adm'r, v. Glick Brothers Lumber Company et al., D.C.Cal., 52 F.Supp. 913, 917. That case covered a number of questions but on the question at issue here, the court said: "My view of the correct construction of the law is as I announced from the bench: The right to sue for treble damages against any one regularly engaged in business, who has overcharged, either as a producer, wholesaler, or retailer is exclusively the right of the individual or concern having to pay the overcharge, and the Administrator has no right to sue in such instance, but is limited in his right to bring actions for treble damages to suits against black market operators and boot-leggers and others not regularly engaged in business."

This case was reversed by the Circuit Court of Appeals, Ninth Circuit, Bowles, Adm'r, O.P.A., v. Glick Brothers Lumber Company et al., 146 F.2d 566, 568, and in that opinion the court not only passed on the other questions involved but analyzed Section 205(e) as follows:

"* * * But one who buys for use or consumption other than in the course of trade or business—the ordinary non-commercial consumer—is not declared a violator. He is apparently thought to possess no choice in the matter. Hence he is the only member of the buying public empowered under § 205(e) to bring suit for treble

damages. In all other cases the right vests in the Administrator for the use and benefit of the Nation as a whole.[1]

"Such is the legislative policy charted by the statute with reasonable clarity. That the phrase 'trade or business' was intended by Congress to carry the meaning here ascribed to it is amply borne out by the legislative history of the Act.[2] Senate Report, 931, p. 8 (77th Cong., 2d Sess.), states that § 205(e) 'will permit private purchasers who buy for personal use or consumption rather than in the course of trade or business, to protect themselves against violations of the Act.' Again, on p. 26 of the Senate Report it is said that 'if a buyer, whose seller has violated a maximum price regulation or price schedule is not entitled to bring such action, because he is a buyer in the course of trade or business, or for other reasons the Administrator may bring such action against the seller on behalf of the United States.' The Senate draft of § 205(e) was not changed in Conference, and was enacted as it originally stood. The Conference Report (No. 1658) states at p. 26 that 'non-commercial consumers might institute treble damage suits.' "

The court further stated in the indicated footnotes as follows:

"[1] This appears to have been the interpretation of the Act adopted by the district courts in the bulk of the cases so far decided, cf., for example: Bowles v. Chew, D.C.N.D.Cal., 53 F.Supp. 787. According to the Administrator there have been more than a hundred cases in which those courts, either directly or by implication, have upheld the construction heretofore indicated. A dozen or more of the decisions are cited, but they do not appear to have been reported as of the date of the filing of the briefs.

"[2] The contemporaneous administrative interpretation (OPA Service 11:804) defines the phrase as having relation to purchases by industrial and commercial consumers as well as to purchasers for resale, that is, in general, to buyers engaged in a commercial activity for profit."

With reference to the footnote last above quoted, the official interpretation of the Office of Price Administration as stated in OPA Service 11:1105 reads in full: "The phrase 'in the course of trade or business' applies to purchases by industrial and commercial consumers as well as to purchases for resale. In general it applies to buyers engaged in commercial activity for profit. A county government purchasing for use in carrying out non-commercial functions is not a purchaser 'in the course of trade or business.' Official Interpretation, 7-3-42."

Since the Circuit Court case last quoted is cited by the plaintiff the analysis by the court becomes highly material.

The plaintiff cites two cases in support of his contention. Speten v. Bowles, Adm'r, O.P.A., 8 Cir., 146 F.2d 602, which is in direct conflict with the case of Bowles v. Glick Brothers Lumber Company, supra, by the Ninth Circuit. The plaintiff, also, cites Bowles, Adm'r, O.P.A., v. Rock, D.C. Neb., 55 F.Supp. 865, and other District Court decisions.

I cannot bring myself to agree with the reasoning or the conclusions of the Eighth Circuit Court nor the District Court of Nebraska in the cited cases for the reasons hereinbefore set out. It seems to me that the turning point in this line of cases is whether the purchaser is the ultimate consumer or whether he is engaged in a strictly commercial enterprise, that is, engaged in purchasing for resale.

The motion to dismiss as to those portions of the complaint hereinbefore set out is sustained. An exception is allowed.