[Civ. No. 16049. Third Dist. Aug. 15, 1977.]

YTTRUP HOMES, Plaintiff and Respondent, v.
COUNTY OF SACRAMENTO et al., Defendants and Appellants.

[Civ. Nos. 16050, 16051. Third Dist. Aug. 15, 1977.]

JOSEPH BENVENUTTI et al., Plaintiffs and Respondents, v.
COUNTY OF SACRAMENTO et al., Defendants and Appellants.

[Civ. No. 16052. Third Dist. Aug. 15, 1977.]

FLOWERS AND OATES, Plaintiff and Respondent, v.
COUNTY OF SACRAMENTO et al., Defendants and Appellants.

COUNSEL

John B. Heinrich, County Counsel, and Monte L. Fuller, Deputy County Counsel, for Defendants and Appellants.

Panattoni & Farrell and Carl B. Panattoni for Plaintiffs and Respondents.

OPINION

**REYNOSO, J.**—The City of Sacramento and County of Sacramento, appellants, bring this consolidated appeal from four judgments of the Superior Court of Sacramento County holding that respondent's are entitled to have portions of their tax payments refunded because their tax assessments had included tax-exempt properties. We deal with properties leased to the public bodies listed for the uses mentioned: First, Chancellor of the State Community Colleges used for state community college system administrative purposes; second, Sacramento City-County Library used for administrative purposes; and third, Los Rios Community College District used for maintenance offices, college-related warehouse and an administrative center.

Each of the actions in the superior court has common elements: (1) Respondents claim a tax exemption because they had leased property to a specific state agency; (2) respondents brought suit to obtain a tax refund rather than pursue an administrative remedy before the county assessment appeals board (hereinafter Board); and (3) in each case, after the action had been taken under submission, the action was reopened to receive evidence as to the fact that taxes had been collected on behalf of the City of Sacramento by the county.

Appellants' principal argument[1] is that the properties involved are neither public schools nor a free public library. As explained below, we reject that argument. However, we agree with appellants in one particular matter—the property must be used for a tax-exempt purpose on the date the tax lien attaches. In addition, we discuss our conclusion that on remand the reversionary interest is not taxable.

---

[1] We rule on each of the ancillary arguments as follows: (1) Respondents are not required to pursue their administrative remedy. This is not a question of valuation nor is it an issue of misclassification. An exception to the exhaustion rule exists when, as here, the facts are undisputed and the property assessed is tax-exempt. (*Star-Kist Foods, Inc.* v.

## I

■ A public school is a public school. A free public library is a free public library. That Webster's Dictionary does not define schools as incorporating administrative offices or warehouses does not persuade us that property used for those purposes are not, in fact, a part of schools or libraries. Neither does Webster's include "principal's office" or "faculty lounge" within the definition of schoolhouse. Rather, we find persuasive (1) the purpose for which property is used and (2) the purpose for the exemption.

With respect to the use of the property, appellants appear to make a two-part argument. First, they repeat that administration buildings and warehouses are not within the definition of either the public school system or a free public library. Second, appellants argue that the properties, being warehouses and administration buildings, are not "exclusively used" for public school purposes and are not a free library open to the public.

Warehouses and administrative buildings are not constitutionally defined as schools, appellants tell us. California Constitution, article IX, section 6 provides: "The public school system shall include all kindergarten schools, elementary schools, secondary schools, technical schools, and State colleges, established in accordance with law and, in addition, the school districts and the other agencies authorized to maintain them." We find appellants' suggestion unacceptable.

The properties were used for and by public schools and the library. No challenge is made that the use was proper for those purposes.

■ The real issue would appear to be whether properties were used exclusively for exempt purposes. "[T]he expression 'exclusively used' has been interpreted to mean not only primary but also certain types of

---

*Quinn* (1960) 54 Cal.2d 507, 510 [6 Cal.Rptr. 545, 354 P.2d 1].) (2) We agree that there is a distinction between the exemption granted charitable institutions (see Cal. Const., art. XIII, § 3, subd. (d) and § 4, subd. (b)) and the exemption which pertains to public schools and free public libraries. Basically, the welfare exception applies where property is used and *owned* by certain specified organizations. The ownership requirement does not apply to the public schools and free public libraries. Accordingly, arguments based on the welfare exemption do not apply. (3) The trial court did not commit prejudicial error by reopening the cases to allow further proof of fact. Such an order rests with the sound discretion of the trial court. (*Cappa* v. *Oscar C. Holmes, Inc.* (1972) 25 Cal.App.3d 978, 985-986 [102 Cal.Rptr. 207].) We find no prejudice.

incidental use as well. However, . . . in order to secure a tax exemption based on 'incidental use,' such *incidental use must be directly connected with, essential to, and in furtherance of the primary use* [citations omitted] *and must be reasonably necessary for the accomplishment of the primary purpose for which the tax-exempt institution was organized.*" (Italics in original; *Honeywell Information Systems, Inc.* v. *County of Sonoma* (1974) 44 Cal.App.3d 23, 27-28 [118 Cal.Rptr. 422].) The record reveals that all leased structures were connected with the everyday and regular administrative processes of either the Sacramento City-County Library, the Los Rios Community College District or the state community college system. Thus, we conclude that the properties were used exclusively for public schools and libraries.

The purpose for the exemption fortifies our conclusion. We note that article XIII, section 3, subdivision (d) exempts property *used* for libraries and museums that are free and open to the public, and property *used* exclusively for public schools and community colleges. ■ "The exemption of property used for public school purposes is not for the benefit of the private owner who may rent his property for said purposes, but for the advantage of the school district that may be compelled to rent property rather than to buy land and erect buildings thereon to be used for the maintenance of its school. With this advantage the school district is able to rent property for a lower rental than the owner of the same property would be willing to accept from a private individual, for the reason that if rented to a school district the owner is relieved from the payment of taxes thereon. On the other hand, if there is no exemption from taxation of property in private ownership but rented to a school district and by it used exclusively for public school purposes, then a school district, when finding it necessary to rent property to be used in the work of maintaining its school, must compete with private persons and pay the same or higher rental than private persons would pay in order to secure property of the same kind and character." (*Ross* v. *City of Long Beach* (1944) 24 Cal.2d 258, 262-263 [148 P.2d 649].) *Ross,* we believe, controls. The public policy consideration of the constitutional provision favors the grant of tax exemption.

## II

■ Respondents contend that the trial court improperly allowed a refund in case No. 248776 because the property was not used for a tax-exempt purpose on the date that the tax lien attached. We agree.

Although the Revenue and Taxation Code makes provision for refund of taxes in cases in which a charitable organization acquires property after the lien date but before the first day of the fiscal year, the section does not mention property which is exempt under the public school exemption. (Rev. & Tax. Code, § 271, see also language used in Rev. & Tax. Code, § 270.) No procedure exists for a refund of taxes collected on property that was not exempt on the lien date and which subsequently becomes tax exempt during that fiscal year. Further support for this interpretation is found in the procedure for filing an affidavit claiming that the property is tax exempt. A person claiming the free public library or public school exemption must file an affidavit between the lien date March 1 (Rev. & Tax. Code, § 2192) and March 15 (Rev. & Tax. Code, §§ 254, 255, subd. (a).)

Since the significant event appears to be the status of the property on March 1, we conclude that the trial court erred in ordering a refund for the portion of taxes paid on the property in fiscal year 1969-1970. On remand, the Board should be directed to deny refund of the taxes paid on the property during this period.

### III

On remand from the trial court, the Board was ordered to assess the value of that portion of the parcels attributed to the tax-exempt use. We approve the procedure.

■ The value of the lessor's reversionary interest in the property leased is *not* taxable.

First, the constitutional provision exempting this property contains the phrase "property *used* for libraries" and "property *used* exclusively for public schools." (Italics added; Cal. Const., art. XIII, § 3, subd. (d).) The language appears to exempt all such property regardless of whether the property is a present possessory interest or a future interest. Revenue and Taxation Code section 104 provides that "real estate" or "real property" includes: "(a) [t]he possession of, claim to, ownership of, or right to the possession of land." Thus, a reversionary interest (a right to the possession of land) is property within the statute and, accordingly, is property used by a school or library.

Second, the public policy behind the exemption for public schools and free public libraries would be destroyed if the reversionary interest were

taxed. Taxing the reversionary interest would mean that the lessor would pass the costs on to the lessee and the lessee would consequently bear the costs of the tax on the reversionary interest. Thus, the public policy that was mentioned in *Ross* would be defeated by imposition of such a tax.

Third, the cases that have allowed deduction of the value of the reversionary interest are of a nature different from the present case. These cases, *City of Palo Alto* v. *County of Santa Clara* (1970) 5 Cal.App.3d 918, 920-921 [85 Cal.Rptr. 544]; *Rothman* v. *County of Los Angeles* (1961) 193 Cal.App.2d 522, 523 [14 Cal.Rptr. 427]; *Ohrbach's Inc.* v. *County of Los Angeles* (1961) 190 Cal.App.2d 575, 580-581 [12 Cal.Rptr. 132], involved the question of whether a nontax-exempt lessor would be allowed to deduct the value of an exempt possessory interest of a lessee. All of the cases involved the question of what tax, if any, a nontax-exempt lessor must pay on a lease to a tax-exempt lessee. In all these cases the courts held that the lessor could properly be taxed on the value of the reversionary interest since the value of the interest while the lessor was not in possession was equivalent to the rent received on the property. In none of the cases was the property used for either "free public libraries" or "public schools." The rationale does not apply in such cases.

The judgment in case No. 248776 is reversed. All other judgments are affirmed.

Friedman, Acting P. J., and Evans, J., concurred.

A petition for a rehearing was denied September 2, 1977, and appellants' petition for a hearing by the Supreme Court was denied October 13, 1977. Clark, J., was of the opinion that the petition should be granted.