[Civ. No. 16594. Third Dist. Mar. 15, 1978.]

MARVIN OATES, Plaintiff and Appellant, v.
COUNTY OF SACRAMENTO et al., Defendants and Respondents.

## COUNSEL

Panattoni & Farrell and Carl D. Panattoni for Plaintiff and Appellant.

John B. Heinrich, County Counsel, and Monte L. Fuller, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**REYNOSO, J.**—The Constitution of California, article XIII, section 3, subdivision (d), provides: "The following are exempt from property taxation: "(d) Property . . . used exclusively for public schools . . . ." We face the issue whether leased space in an office building housing the

administrative offices of the county superintendent of schools is within the exemption. We conclude that the offices of the county superintendent of schools are so used. Accordingly, the exemption applies. We further hold that a portion of the property, not leased to the county superintendent of schools and used for nonexempt purposes, can be apportioned from the exempt property. The tax is properly assessed only against the nonexempt portions.

Plaintiff Marvin Oates filed a complaint for the refund of taxes. Defendants, County of Sacramento and City of Sacramento, denied liability and demurred.[1] After the trial court overruled the demurrer, the parties agreed upon a stipulated statement of facts. After presenting argument based on the stipulated facts, the parties submitted the matter.

We capsulize the court's findings of fact. Plaintiff owns real property in Sacramento consisting of a building and grounds. A portion of the building is leased to the Sacramento County Superintendent of Schools and staff as administrative offices. Plaintiff filed a claim for refund after payment of real property taxes. The superintendent's offices house a computer and data processing equipment and a print shop, as well as space which stores educational film and books.

The functions which the superintendent performs on the premises, according to the findings, are varied.[2] They include the purely administrative functions of the superintendent's office. The staff performs its responsibility to coordinate and assist various public school districts regarding certification of personnel, budgets, books, audio-visual equipment, speech and handicapped therapy. Other responsibilities respecting

[1]Defendant contends that the court lacked subject matter jurisdiction due to plaintiff's failure to exhaust his administrative remedies. We reject the contention.

The issue of the exhaustion of administrative remedies was recently before this court under similar circumstances in *Yttrup Homes* v. *County of Sacramento* (1977) 73 Cal.App.3d 279 [140 Cal.Rptr. 680]. Where the issue is not one of valuation or of misclassification and the facts are undisputed, an exception to the exhaustion rule exists on the issue of whether the property is tax exempt. (*Id.* at p. 282, fn. 1.) The facts of this case meet the requirements of the exception to the exhaustion rule.

[2]Section 7 of the stipulation incorporates the functions performed at the administrative offices. It is set forth in full:

"7. The functions performed on the premises were:

"a.) Puchase [*sic*] equipment and supplies for the Superintendent's operation; coordinate quantity purchases of major supplies with/for various school districts;

"b.) Register and verify credentials for certified employees of school districts;

"c.) Administer the retirement plans for various school districts;

the State Board of Education are also performed: research regarding migratory workers, and placement studies.


Based upon the stipulated facts, the trial court found that the administrative offices of the county superintendent of schools are incidental to and reasonably necessary to the accomplishment of the purposes of the public school system. Nonetheless, the court held that the lessor of such offices is not entitled to the exemption because such property is not used exclusively for such purposes. Plaintiffs appeal.

"d.) Review budgeting of districts for state apportionment funding;

"e.) Compile composits [*sic*] of average daily attendance data for state apportionment purposes to school districts;

"f.) Catalog and stock approximately 600,000 supplemental books which are lent to school districts;

"g.) Perform research for the State Board of Education regarding a system of transmitting migratory student school records to other states;

"h.) Perform placement studies for State Board of Education such as: teacher placement opportunities, job availability in local area for purposes of directing vocational education curriculum;

"i.) Provide various audio-visual films and equipment to school districts;

"j.) Maintain a special education department which provides a curriculum and teachers at Juvenile Hall, Boys Ranch, and Girls School.

"k.) Provide districts with specialists in speech therapy and curricula for the handicapped at the district facilities;

"l.) The Superintendent's director of finance is a Sacramento County Auditor, who counsels on the budgets, performs auditing functions for the Districts, writes payroll for the Superintendent and the smaller districts in the county, audits claims and issues warrants for all the Superintendent and school district expenditures;

"m.) Receive and distribute federal and state funds to districts;

"n.) Coordinate school district vocational programs with local labor unions and school districts;

"o.) Assist in curriculum development for school districts;

"p.) Coordinate pre-entry job skill programs for students in hospitals, laboratories and medical facilities combined with classroom instruction at district facilities;

"q.) Compile attendance records and approve curriculum offered at private schools to assure state compulsory education requirements are met;

"r.) Compile and certify private tutors, and issue work permits to assure students under 16 years of age meet compulsory education requirements;

"s.) Contract with Captioned Films for the Deaf Company, a non-profit organization, as a depository for special films produced by the University of Indiana under a special federal program. The films are loaned without charge to public schools, private schools and other public agencies. The superintendent receives approximately $2,332.00 per year from Captioned Films for the Deaf Company for this service. The building area used was approximately 50 square feet for such activity;

"t.) Received rental of approximately $1,400.00 annually from private schools, governmental agencies, and private organizations for 16mm films. This utilizes approximately 1,000 square feet of the building space.

"u.) During the period in question no classroom instruction was given by the superintendent or staff to students on the premises.

"v.) The superintendent's staff includes approximately 100 certified teachers."

I

■ We must examine two separate but related issues with respect to the county superintendent of schools. First, is it the primary function of the superintendent of schools to serve public schools? Second, was the property he leased used "exclusively" for public schools? The term "exclusively" includes incidental as well as primary uses. (*Honeywell Information Systems, Inc.* v. *County of Sonoma* (1974) 44 Cal.App.3d 23, 28 [118 Cal.Rptr. 422].) Incidental use must be directly connected with, essential to and in furtherance of the primary use. (*Ibid.*)

The California Constitution provides for the office of the county superintendent of schools. (Art. IX, § 3.) The Education Code details the role of the superintendent. Education Code section 801 provided, at the time in question:[3] "The superintendent of schools of each county shall:

"(a) Superintend the schools of his county.

"(b) Visit and examine each school in his county at reasonable intervals to observe their operation and to learn of their problems. He may annually present a report of the state of the schools in his county, and of his office, including but not limited to his observations while visiting the schools, to the board of education and the board of supervisors of his county.

"(c) Distribute all laws, reports, circulars, instructions, and blanks which he may receive for the use of the school officers.

"(d) Keep in his office the reports of the Superintendent of Public Instruction.

"(e) Keep a record of his official acts, and of all the proceedings of the county board of education, including a record of the standing, in each study, of all applicants for certificates who have been examined, which shall be open to the inspection of any applicant or his authorized agent."

And Education Code section 802 adds, in part:

"The county superintendent of schools shall also:

---

[3]All references to the Education Code are to the code in effect at times relevant herein.

"(a) Enforce the course of study.

"(b) Enforce the use of state textbooks and of high school textbooks regularly adopted by the proper authority.

"(c) Preserve carefully all reports of school officers and teachers." We see that the statutory responsibilities of the superintendent are directly tied to the public schools.

While the operation of the public schools is the responsibility of their governing boards (Ed. Code, § 1051), the legislative scheme calls for ubiquitous involvement on the part of the superintendent. He must operate public schools in emergency situations or when children are denied the opportunity for an education. (Ed. Code, § 885, subd. (d).) By contract with the board, the superintendent provides direct services. (Ed. Code, § 1061.) The superintendent must make reports to the county boards of education (Ed. Code, § 801, subd. (b)) and to the State Superintendent of Public Instruction. (See Ed. Code, §§ 802.1, 803, 804, 806.) He serves as ex-officio secretary and executive officer of the county board of education. (Ed. Code, § 608.) The duties of the county superintendent of schools are performed either directly for school districts or for the State Superintendent of Public Instruction and the county board of education. Thus, the primary function of the superintendent is to serve public schools.

We must focus on the use of the property. (*Yttrup Homes* v. *County of Sacramento* (1977) 73 Cal.App.3d 279 [140 Cal.Rptr. 680].) Defendants contend that the specific use of the property proscribes applying the exemption. That is, even if administrative offices are exempt, the use of these offices was not exclusively for public school purposes. Respondent points to space used for: (1) visual material for the deaf, (2) film storage, and (3) the computer data processing center.

We explain each of the uses. First, the visual materials for the deaf are films produced under a federal grant. They are loaned without charge to private and public schools as well as to other public agencies. The superintendent uses 50 square feet for the storage and receives rental payments of approximately $2,332. Second, educational films are stored in an area of approximately 1,000 square feet. Rental income from governmental and private organizations is approximately $1,400 per year. Third, the computer is housed in an area of 2,880 square feet. It services school districts in northern California, the State Department of

Education, and the chancellor's office of the community colleges. Private users paid $7,291.41 in 1971-1972 for 3 percent of the computer time.

We consider the extent of nonpublic school use de minimis. The superintendent leases a total of 32,960 square feet. Each of the three uses is related to public schools. Nor do the rental accounts persuade us otherwise. It is not the small amount of income which renders the property exempt or nonexempt—it is its use. (*Honeywell Information System, Inc.* v. *County of Sonoma, supra,* 44 Cal.App.3d 23, 29 [118 Cal.Rptr. 422].) We conclude that the property leased by the superintendent is exempt.

## II

We turn to the issue of apportionment. The same building is leased to the county superintendent of schools (32,960 square feet) and to a nonexempt private college (6,072 square feet). Is the owner of the property entitled to an exemption for that portion leased to the superintendent?

*Cedars of Lebanon Hosp.* v. *County of Los Angeles* (1950) 35 Cal.2d 729 [221 P.2d 31, 15 A.L.R.2d 1045], controls. The court approved apportionment of property so that tax is assessed only against the nonexempt portions. In *Y.M.C.A.* v. *County of L.A.* (1950) 35 Cal.2d 760 [221 P.2d 47], the same approach was followed. Respondents argue that the cited cases concern the welfare (Cal. Const., art. XIII, former § 1c; Rev. & Tax. Code, § 214), and not the public school exemption. But both exemptions seek to relieve the beneficiaries of a tax burden. Neither welfare nor public school beneficiary would be served by forcing upon a property owner an all-or-nothing approach. Where, as here, a clearly identifiable portion of a parcel of property is rented to a unit of government which is tax exempt, a tax may not be imposed upon that portion.

However, we must remand to the trial court the apportionment issues in one particular. The leased parcel contains a large parking lot. The stipulation of facts does not tell us which portion is used by the superintendent. On remand the trial court must make findings which will specify which portions of the entire parcel are to be considered exempt.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

Evans, Acting P. J., and Friedman, J.,* concurred.

A petition for a rehearing was denied April 3, 1978, and respondents' petition for a hearing by the Supreme Court was denied May 11, 1978.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.