SISTERS OF PROVIDENCE IN WASH-
INGTON, INC., Appellant,

v.

MUNICIPALITY OF ANCHORAGE,
Appellee.

No. 6938.

Supreme Court of Alaska.

Oct. 14, 1983.

Robert J. Dickson, Atkinson, Conway, Bell & Gagnon, Anchorage, for appellant.

Julie Garfield, Deputy Municipal Atty., Jerry Wertzbaugher, Municipal Atty., Anchorage, for appellee.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and DIMOND, Senior Justice.*

## OPINION

BURKE, Chief Justice.

This appeal concerns a claim of exemption, under AS 29.53.020(a)(3), from a municipal *ad valorem* personal property tax.

Appellant, the Sisters of Providence in Washington, Inc. [Providence], is a nonprofit corporation which owns and operates Providence Hospital, located in Anchorage, Alaska. In 1976, Providence completed construction of its North Tower addition. Construction cost overruns, however, left Providence with insufficient capital to equip the new hospital addition. Providence was pre-cluded from borrowing additional funds because of a debt limitation contained in its corporate charter. It, therefore, entered into an agreement with Crocker McAlister Equipment Leasing Inc. [Crocker] to obtain beds, televisions and x-ray equipment.

The appellee, Municipality of Anchorage [Municipality], assessed an *ad valorem* personal property tax against Crocker on the "leased" equipment in 1979 and 1980. Crocker, in turn, notified Providence that Providence was obligated under the lease agreement, to "pay all taxes ... imposed against ... the leased equipment." Thus, it is only by virtue of Providence's lease agreement with Crocker that Providence is involved in this tax dispute.

Providence sought a tax exemption under AS 29.53.020(a)(3), based upon its use of the property exclusively for non-profit hospital purposes. On July 17, 1980, the Municipality of Anchorage Board of Equalization denied the request for tax exemption. Providence appealed the decision to the superior court, which affirmed the Board's decision. Providence now appeals the superior court's decision.

■ Providence bears the burden of demonstrating that the property in question falls within the claimed exemption. Furthermore, the exemption provision will be strictly construed against Providence and in favor of the Municipality. *Greater Anchorage Area Borough v. Sisters of Charity of the House of Providence*, 553 P.2d 467, 469 (Alaska 1976); *McKee v. Evans*, 490 P.2d 1226, 1230 (Alaska 1971); *Harmon v. North Pacific Union Conference Association of Seventh Day Adventists*, 462 P.2d 432, 436 (Alaska 1969). This canon of strict construction, however, "is an aid to, not a substitute for statutory interpretation; the interpretation must still be a reasonable one." *McKee*, 490 P.2d at 1230 n. 18.

Providence's claim for exemption is founded upon its use of the property exclusively for non-profit hospital purposes. AS

* Dimond, Senior Justice, sitting by assignment made pursuant to Article IV, section 11, of the Constitution of Alaska.

29.53.020(a)(3) provides: "The following property is exempt from general taxation: ... (3) property used exclusively for non-profit ... hospital ... purposes." Providence clearly uses the beds, televisions and x-ray equipment exclusively for non-profit hospital purposes. The issue, rather, is whether Crocker's "leasing" of the property for profit renders the statutory exemption inapplicable.

Providence's first argument on appeal is that the trial court erred in finding that the agreement between Providence and Crocker was a true lease rather than a security agreement. Providence asserts that Crocker's interest in the property is solely that of a secured creditor and, as such, should be disregarded for purposes of tax assessment. The Municipality responds by arguing that the agreement constituted a true lease and that Providence should be estopped from arguing otherwise.

■ Providence argues, in the alternative, that should the agreement be construed as a lease, the lessor's nonpossessory use of the leased equipment should be disregarded in determining whether the property was used exclusively for hospital purposes. The Municipality argues in response that all uses of the property, regardless of the identity of the user, should be considered in determining the exclusivity of the property's use; that Crocker's leasing of the property for profit is a use which is *not* for non-profit hospital purposes; and that, therefore, the property is not being used *exclusively* for non-profit hospital purposes.[1]

■ We first address Providence's argument that the agreement between Providence and Crocker, entitled "Equipment Lease," was in fact a security agreement and that Crocker's "use" of the property as a security holder was therefore, irrelevant for purposes of tax assessment. Ordinarily, "whether a lease is intended as security is to be determined by the facts of each case." AS 45.01.201(37). *See Western Enterprises, Inc. v. Arctic Office Machines, Inc.,* 667 P.2d 1232 (1983) (per curiam). While the circumstances surrounding the execution of the agreement and the agreement's express language indicate that the lease-security agreement determination is a very close question, we do not resolve the issue on this basis.[2] Rather, we conclude that Providence, which freely chose the form of this transaction, may not be heard to repudiate it.

■ This conclusion is in accordance with the general rule that a taxing authority may penetrate the form of a transaction to determine its substance, but a taxpayer may not. *E.g., Higgins v. Smith,* 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406 (1940); *United States v. Morris & Essex Railroad,* 135 F.2d 711, 713 (2d Cir.), *cert. denied,* 320 U.S. 754, 64 S.Ct. 61, 88 L.Ed. 449 (1943). Our recent decision in *State v. Alaska Pulp America, Inc.,* Op. No. 2735 (Alaska, September 30, 1983), is an example of a case in which a taxpayer was precluded from utilizing the substance-over-form doctrine. In a statement referring to a taxing context, we noted that:

> Generally, courts refuse to look through the corporate veil and consider separate corporations a single unit even when inter-corporation transactions are mere bookkeeping entries.

---

1. We find Providence's third argument, that taxation of the leased property violates the equal protection clauses of the Alaska and United States Constitutions to be without merit. The different tax treatment of equipment which is either owned or leased by Providence is rational and bears a fair and substantial relation to the object of AS 29.53.020. *Cf. First Nat'l Bank of Denver v. Board of County Comm'rs,* 189 Colo. 128, 538 P.2d 427 (1975) (court held that statute requiring exempt property to be both owned and used for charitable purposes did not deny equal protection by

treating charity which leased property differently from one which owned property).

2. This court may affirm a judgment of the superior court on different grounds than those advanced by the superior court and even on grounds not raised by the parties in the superior court. *Native Village of Eyak v. GC Contractors,* 658 P.2d 756, 758 (Alaska 1983); *Rutherford v. State,* 605 P.2d 16, 21 n. 12 (Alaska 1979).

Slip Op. at 13. We also quoted with approval the following language from *Cook Export Corp. v. King,* 617 S.W.2d 879, 881 (Tenn.1981):

> It is untenable for the parent to contend that this subsidiary does not effectively exist for purposes of state taxation and yet insist that it does exist as a viable legal entity for purposes of federal taxation....
>
> The fact that parties may conduct business transactions in such a way as to take advantage of federal taxation does not necessarily entitle them to exemption from state taxation under other and different statutes.... Nor will parties that have deliberately adopted a corporate structure in form be permitted to disregard these when they become disadvantageous.

Slip Op. at 19–20.

■ The rule which precludes a taxpayer from challenging the form of a transaction has exceptions, as where the transaction was entered into in ignorance, or the form was either not wanted or not controlled by the taxpayer, but none of the exceptions are applicable here.[3] For purposes of resolving the taxation issue involved in this case, we therefore hold Providence to the characterization of the transaction which it chose at the time the transaction was entered into. In short, we treat the transaction as a lease.

We next address whether Crocker's use of the property as lessor to derive profit renders AS 29.53.020(a)(3) inapplicable.

Under AS 29.53.020(a)(3), property "used exclusively for nonprofit ... hospital ... purposes" is exempt from taxation. We interpreted this statutory provision in the context of a leasehold arrangement in *Greater Anchorage Area Borough v. Sisters of Charity of the House of Providence,* 553 P.2d 467 (Alaska 1976) (hereinafter *Sisters of Charity*). In that case, Providence, as owner of a professional building, rented three floors of office space to private doctors, and sought a tax exemption for the leased office space, based upon Providence's use of the property for non-profit hospital purposes. We rejected Providence's argument, stating:

> While the exempt and the commercial uses of the Professional Building are not as clearly separable as were the uses in *Evangelical,* the lesson of that case is applicable here: when the property in question is used even in part by non-exempt parties for their private business purposes, there can be no exemption.

*Sisters of Charity,* 553 P.2d at 471.

■ In the case at bar, Providence argues that the rule in *Sisters of Charity* is that only the lessee's use of the property should be considered, and not the owner's. The rule in *Sisters of Charity,* however, is that *all* uses of the property should be considered to determine whether or not the property is used exclusively for exempt purposes. Therefore, Crocker's ownership and use of the property to derive profit was relevant to the trial court's inquiry into the applicability of AS 29.53.020(a)(3).

Authority is split on the issue of whether the owner-lessor's leasing of the property for profit renders the property's usage not exclusively for exempt purposes. The majority of the cases upon which Providence relies are unpersuasive in that they do not address the issue raised in this appeal. In *Anniston City Land Co. v. State,* 160 Ala. 253, 48 So. 659 (1909), *Scott v. Society of Russian Israelites,* 59 Neb. 571, 81 N.W. 624 (1900), and *Cox v. Dillingham,* 184 P.2d 976 (Okla.1947), the issue facing the courts was

---

**3.** 1 Bittker, *Federal Taxation of Income, Estates and Gifts* ¶ 4.3.3 pp. 4–41, 4–42 (1981):

Although the substance-over-form doctrine is ordinarily a one-way street, taxpayers are sometimes permitted to repudiate the form of a transaction entered into in ignorance, especially if the taxpayer was deceived by another party or other mitigating circumstances make it possible to characterize the form as a trap for the unwary. The courts have not gone so far as to require "informed consent" before holding a taxpayer to his own red tape, however, and these cases of lenience, though important, remain exceptional.

*See generally* Donaldson, *When Substance-Over-Form Argument is Available to the Taxpayer,* 48 Marq.L.Rev. 41 (1964).

whether the exempted user of the property must also be the owner. In *Cleveland State University v. Perk,* 26 Ohio St.2d 1, 268 N.E.2d 577, 579 (1971), the exemption involved did not require "exclusive use." Instead, it provided that "public colleges and academies and all buildings connected therewith, . . . shall be exempt from taxation." *Oates v. County of Sacramento,* 78 Cal.App.3d 745, 143 Cal.Rptr. 337 (1978), is also distinguishable in that the court's holding turned *not* on the owner-lessor's use of the property, but rather on the lessee's use of the property for both school and non-school purposes. The court did not face the issue presented in the case at bar, i.e., whether the owner's use of the property to generate rental income rendered the property's usage not exclusively for exempt purposes.[4]

Providence cites only one case that squarely presents the issue. In *Ross v. City of Long Beach,* 24 Cal.2d 258, 148 P.2d 649 (1944), privately owned land was leased at a profit to a public high school district and used by the lessee solely for school purposes. The City argued that the exemption was improper because the owner used the property for the purpose of deriving revenue and that therefore, the property was not "used exclusively for public school purposes." The California court found persuasive the reasoning of *Scott,* 81 N.W. at 624, and cases cited therein. Those cases, however, dealt only with whether ownership was a criterion for exemption, not with the "exclusivity of use" issue. The majori-

ty in *Ross* went on to conclude that in order to rule in favor of the City by denying the exemption,

> it would be necessary . . . to construe the constitutional section . . . as requiring property used by a school district for public school purposes *not only to be solely used by the district but also to be owned by the district.*

*Id.* 148 P.2d at 653 (emphasis added). Thus, the *Ross* court was sidetracked by the "ownership" issue and failed to analyze the "exclusivity of use" issue.[5]

The persuasiveness of the *Ross* case is also diminished in that the court was persuaded in its interpretation of the public school exemption by the fact that the California legislature had left the "exclusive use for public schools" exemption provision unchanged, but had amended various other exemptions to include property used for an exempt purpose, but rented at a profit. Alaska's constitutional and statutory exemptions, however, do not share a similar history.

The cases cited in support of the Municipality's view are better reasoned. The early case of *State ex rel. Hammer v. MacGurn,* 187 Mo. 238, 86 S.W. 138 (1905), illustrates the policy behind denying exemptions where the lessor uses the property for the purpose of generating a profit. In *MacGurn,* an owner leased real property to a public school district which used the property solely for school purposes. The court

---

4. Providence's use of *Kunes v. Samaritan Health Service,* 121 Ariz. 413, 590 P.2d 1359 (1979), is misleading. The Arizona state constitution restricts exemptions to property which is both owned and used by the charitable organization. Therefore, the further requirement that the property "not be used or held for profit" must necessarily refer to the use by the charitable institution. In "own and use" jurisdictions, there will never be a case like the one at bar. Where the charitable organization is not an *owner* but a lessee, the exemption will be inapplicable for failure to meet the ownership requirement.

5. Justice Traynor, however, discussed in his dissent the exclusivity of use issue and concluded:

> It follows that the property is not tax exempt unless all interests in the property, including the lessor's interest, are used exclusively for public schools. Even if the interest of the lessee school district is used exclusively for public schools, it does not follow that the interest of the lessor who has rented his property for private gain is so used. The lessor, like any other lessor of commercial property, uses his interest in the property, not for public schools but for the ordinary commercial use of producing income.
>
> *Ross,* 148 P.2d at 653–54, (Traynor, J., dissenting).

adopted the view that exemptions are granted as the *quid pro quo* for non-profit contributions of services and aid to society in general:

> [I]f the private owner . . . allows his land to be used for . . . [exempt] purposes, . . . and derives no personal benefit . . . . the land is exempt from taxation. . . For in such cases the owner contributes the use of his land to public or quasi-public use, or to such use as the Constitution contemplates and derives no gain or profit for himself and therefore the state does not exact a tax from his land with one hand while accepting a contribution of the use of his land with the other hand.

*MacGurn*, 86 S.W. at 139.

A more modern case, *Commissioners of Cambria Park v. Board of County Commissioners of Weston County*, 62 Wyo. 446, 174 P.2d 402 (1946), reiterates this same policy:

> We cannot think that it was the intention of the framers of our state constitution and the legislatures of this state . . . that a person whose property would ordinarily be subject to taxation should be released from bearing his share of the expense of government by simply leasing his property for a substantial rental to an Association which, due to the purposes for which it was organized, is regarded as a public benefactor and for that underlying reason is exempted from paying taxes when using property for those purposes. When a person derives income from property in such fashion it seems to us he is using it for his own personal advantage and we can see no valid reason why he should not, as all other citizens who rent their property do, pay the taxes regularly assessed to it.

*Id.* 174 P.2d at 409–10.

The parties fail to cite *Appeal of Wirt*, 225 Kan. 517, 592 P.2d 875 (1979), a case closely analogous to the one at bar. In *Wirt*, a non-profit corporation operated a psychiatric hospital. The hospital leased both real and personal property from a for-profit corporation and used the property solely for hospital purposes. Like the case at bar, the hospital-lessee was obligated to pay all taxes and, in addition, was responsible for repairs, maintenance and replacement of the leased property. The hospital sought a tax exemption under a statute which read:

> The following . . . property . . . is hereby exempt from all . . . taxes . . . : all real . . . and . . . personal property, actually and regularly used exclusively for hospital purposes by . . . a psychiatric hospital . . . operated by a corporation organized not for profit.

*Id.* 592 P.2d at 877. The hospital argued that "use" meant the physical use of the property. The county tax assessor argued that the leasing of the property constituted use by the owner and that, therefore, the property could not be said to be used exclusively for hospital purposes.

The court carefully reviewed the cases cited by each party and concluded that the commercial use of the property by the owner was, in fact, a use which rendered the hospital-lessee's use of the property non-exclusive and the exemption inapplicable.

> To say that an investor who owns valuable property, real or personal, and leases it for profit is not using his property ignores the obvious fact that the owner-lessor is exercising his right to use the property just as surely as if he were utilizing it in a physical sense for his own objectives. . . . The renting by the lessor and the physical use by the lessee constitute simultaneous uses of the property and when an owner leases his property to another, the lessee cannot be said to be the only one using the property. The owner is using it as he sees fit to reap a profit from his investment just as surely as if he physically operated the property.

*Id.* 592 P.2d at 879–80.

■ We find the authorities cited by the Municipality to be the more persuasive and conclude that Crocker's leasing of the property for profit constituted a "use" of the property which was not for non-profit hos-

pital purposes. We therefore hold that the trial court did not err when it found the exemption contained in AS 29.53.020(a)(3) inapplicable.

This court is mindful of the policy behind the tax exemption for property used for non-profit hospital, educational, religious or charitable purposes. The countervailing policy of providing a broad base of taxation, however, prevents this court from extending an exemption statute's "coverage beyond what is clearly included on the face thereof." *McKee*, 490 P.2d at 1230 n. 19. The exemption statute involved in this case is clear and unambiguous: "[P]roperty used exclusively for nonprofit ... hospital ... purposes" is exempt from taxation. AS 29.53.020(a)(3). Property used by the lessee for nonprofit hospital purposes which is also used by the lessor to generate profit is not within the express language of the exemption statute. If there are policies to be implemented by granting an exemption under these circumstances, then it must be done by the legislature.

The superior court's judgment is AFFIRMED.

MOORE, J., not participating.

DIMOND, Senior Justice, joined by RABINOWITZ, Justice, dissenting.

I disagree with this court's opinion and accordingly dissent.

Article IX, section 4, of the Alaska Constitution specifically states: "*Exemptions.* All, or any portion of, property used exclusively for non-profit religious, charitable, cemetery, or educational purposes, as defined by law, shall be exempt from taxation." This has been reiterated by the legislature in AS 29.53.020, which provides in part: "(a) The following property is exempt from general taxation: ... (3) property used exclusively for nonprofit religious, charitable, cemetery, hospital or educational purposes...." There can hardly be any question that these provisions, by their plain meaning, exempt from taxation any and all property that is used exclusively for one or more of these nonprofit purposes. What is at issue in this appeal is what kind of "use" is meant by the constitution and the statute.

I believe it is entirely obvious that, according to the common meaning of the term "use," the leased hospital equipment is used on a constant basis by Providence exclusively for hospital purposes. The Municipality contends that Providence is not entitled to a tax exemption for its use of the equipment because Crocker also "uses" the equipment by owning it and leasing it to the hospital for a profit. In my opinion, this contention is inconsistent with reality and common sense. Crocker does not physically use the equipment at all; its only interest in the equipment is to be able to get it back if the hospital fails to make the lease payments.

Providence supports its argument that it is entitled to the tax exemption by relying upon a series of cases, most notably *Scott v. Society of Russian Isrealities,* 59 Neb. 571, 81 N.W. 624 (1900), and *Ross v. City of Long Beach,* 24 Cal.2d 258, 148 P.2d 649 (1944). I find these cases to be persuasive authority for Providence's position and I believe this court's interpretation of them is simply erroneous.

In *Scott,* real property was leased to a religious group for valuable consideration. The religious group agreed to pay, in addition to rent, all taxes imposed on the property during the term of the lease. The group used the property exclusively for religious purposes. Similar to Alaska's statute, Nebraska law exempted "property as may be used exclusively for ... [r]eligious ... [p]urposes." The trial court held that all taxes assessed against the property while it was used by the religious group were null and void. In affirming this conclusion, the Nebraska Supreme Court stated as follows:

It is the exclusive use for the purpose named which determines whether the property is subject to the burden of taxation or not. To hold that a religious

society must be the absolute owner of the property occupied or used by it exclusively for church purposes, to create the exemption, would be to inject words into the constitution and statute which are not therein written.

*Scott,* 81 N.W. at 624–25 (citations omitted). The court in *Ross v. City of Long Beach,* 24 Cal.2d 258, 148 P.2d 649 (1944), similarly interpreted California's state constitutional provision exempting from taxation all "property used exclusively for public schools." In that case, the public school district had leased privately owned property and used it exclusively for school purposes. The City contended that, despite the school district's physical occupation of the property and its use of the property only for school purposes, the property should not be exempt from taxation because it was owned by a private individual who rented the property to the school district for a profit. The California Supreme Court, holding that the property was exempt, stated:

> The exemption of property used for public school purposes is not for the benefit of the private owner who may rent his property for said purpose, but for the advantage of the school district that may be compelled to rent property rather than to buy [it] . . . . With this advantage the school district is able to rent property for a lower rental than the owner of the same property would be willing to accept from a private individual, for the reason that if rented to a school district the owner is relieved from the payment of taxes thereon.

*Ross,* 148 P.2d at 651–52. This is still the law followed in California. *See Mann v. County of Alameda,* 85 Cal.App.3d 505, 149 Cal.Rptr. 552, 554 (1978); *Yttrup Homes v. County of Sacramento,* 73 Cal.App.3d 279, 140 Cal.Rptr. 680, 682–83 (1977). Other jurisdictions have reached similar conclusions when faced with similar cases. *See, e.g., Cleveland State University v. Perk,* 26 Ohio St.2d 1, 268 N.E.2d 577 (1971); *Anniston City Land Co. v. State,* 160 Ala. 253, 48 So. 659 (1909); *Cox v. Dillingham,* 199 Okl. 161, 184 P.2d 976 (Okla.1947).

I believe that this case is analogous to *Scott* and *Ross.* In the first place, holding that property leased for an exempt purpose is exempt from taxation would benefit the nonprofit lessee. In this case, Providence is contractually obligated to pay to Crocker any taxes, should taxes be imposed upon the property. Thus, if the property were held to be tax-exempt, Providence's costs in using the equipment would be that much less, enabling Providence to provide more services to patients with the saved money. Similarly, in future cases the benefit of the tax-exemption would inure to the nonprofit lessee: either the lessee would assume the owner's tax obligation and then not pay the usual taxes because of the exemption, or the lessee would negotiate a lower lease price on the basis that the owner will not have to pay the usual taxes because of the exempt use made of the property by the lessee.

In the second place, holding that property leased for an exempt purpose is *not* tax-exempt because of the lessor's "use" of the property to make a profit is, for all practical effects, the same as holding that property used exclusively for an exempt purpose is nonetheless not tax-exempt unless it is also owned by the nonprofit entity. Other states may require, by the terms of their constitutions and statutes, that a nonprofit entity both own the property and use it exclusively for an exempt purpose before the property is exempt from taxation, but that is clearly not what is required by the Alaska Constitution and AS 29.53.020.

Providence's case is further bolstered by a case not cited by them. In *First National Leasing Corp. v. City of Madison,* 81 Wis.2d 205, 260 N.W.2d 251 (1977), that state's highest court was faced with a case synonymous to the one presently at bar.

*Madison* involved the leasing of x-ray and hospital equipment by a non-profit hospital from the appellant, a leasing company doing business for profit. Wisconsin law pro-

vided a tax exemption for "[p]roperty ... used exclusively for the purposes of any hospital ... devoted primarily to the diagnosis, treatment or care of the sick, injured, or deformed ...." *Id.* 260 N.W.2d at 252 (emphasis omitted). The City's position in *Madison* was similar to what the Municipality contends here; that the *Madison* property was not exempt from taxation because the leasing company did business for profit, and took depreciation on the leased property for income tax purposes.[1]

The Wisconsin Supreme Court rejected the argument put forth by the City, and specifically declined to follow the dissent of Justice Traynor in *Ross v. City of Long Beach,* 24 Cal.2d 258, 148 P.2d 649 (1944), which the majority relies on in the case at bar. In so doing, the *Madison* court noted,

> property has multiple "uses." In the instant case, the ... x-ray equipment ... had diagnostic and therapeutic uses for the hospital. In addition, it had a use to its owner, the leasing corporation, as personal property which could be rented at a profit or which could be mortgaged or

assigned. We conclude, however, that it was not these latter intangible uses of the property to which the legislature referred when it enacted the phrase, "used exclusively" for hospital purposes.[2]

*Madison,* 260 N.W.2d at 254 (footnote omitted).

In light of these decisions then, I thus believe that the hospital equipment leased and used by Providence exclusively for hospital purposes should be held to be exempt from taxation.[3]

I believe the judgment of the superior court should be reversed.

---

1. The Wisconsin statute also required that the hospital had to be a non-profit hospital if owned and operated by a corporation, voluntary association, foundation or trust. The terms of the lease agreement in *Madison* also provided that in the event the property was found taxable, the hospital would pay the taxes. *Madison,* 260 N.W.2d 251, 252–53.

2. The *Madison* court aptly solved the area of confusion surrounding these "exclusive use" statutes. They noted that the legislature had employed not the noun, "use," but the verb. *Madison,* 260 N.W.2d at 254 n. 1. The verb "to use" was explained as follows:

   > In ordinary parlance to use an article is to utilize or employ it for the purposes for which it was intended. For instance, to use a plow is to cultivate the ground with the plow. To use a wagon is to haul with the wagon or drive it for the purposes for which a wagon is ordinarily used. To use a refrigerator is to place it in one's home to preserve food and kindred articles.

   *Id.* 260 N.W.2d at 254, *quoting Bowles v. Madl* (Kan.1945), 60 F.Supp. 152, 153. While there are a multiplicity of meanings that may be ascribed to the word "use," I agree with the Wisconsin Supreme Court that " 'used exclusively' for hospital purposes" could only have

the natural meaning of referring to the physical use of the property. *See Madison,* 260 N.W.2d at 254–255.

3. I do concur with the majority that Providence may not be heard to repudiate the form of the transaction that it freely entered into. This conclusion is in accordance with the proposition that only the taxing authority may look beyond the form of a transaction to determine the tax consequences. *See, e.g., Commissioner v. National Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 149, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717, 727 (1974) ("while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not"); *Moline Properties, Inc. v. Commissioner,* 319 U.S. 436, 438–39, 63 S.Ct. 1132, 1134, 87 L.Ed. 1499, 1502–03 (1943); *Higgins v. Smith,* 308 U.S. 473, 477, 60 S.Ct. 355, 357, 84 L.Ed. 406, 411 (1940) ("the Government may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him"); *Bennett Paper Corp. & Subsidiaries v. Commissioner,* 699 F.2d 450, 451–52 (8th Cir.1983). The issue, however, of whether the transaction was a lease or a secured transaction does not decide the applicability of AS 29.53.020.