■ In the Matter of AMERICAN MANAGEMENT ASSOCIATIONS, Appellant-Respondent, v ASSESSOR OF THE TOWN OF MADISON et al., Respondents-Appellants, and HAMILTON CENTRAL SCHOOL DISTRICT, Intervenor-Respondent-Appellant. (And 25 Other Proceedings.)—Cross appeals from judgments of the Supreme Court, entered May 13, 1977 in Madison County, upon a decision of the court at a Trial Term, without a jury, which granted in part and denied in part petitioner's applications, in 26 proceedings pursuant to article 7 of the Real Property Tax Law, for tax exempt status for 13 parcels of land for the years 1975 and 1976. Petitioner owns several parcels of land in Madison County and commenced proceedings pursuant to article 7 of the Real Property Tax Law to review the tax assessments upon 13 of these parcels for the years 1975 and 1976. It was alleged in the petitions that the 13 parcels were tax exempt under subdivision 1 of section 421 of the Real Property Tax Law due to the fact that petitioner was an educational institution and the parcels were used exclusively for educational purposes. The trial court found that petitioner was essentially a school for the continuing education of businessmen; that it does not run on a semester basis but, rather, its courses, seminars and conferences last from two days to four weeks; that approximately 4,800 courses and seminars were conducted world-wide from July 1, 1974 to June 20, 1976; that petitioner maintains libraries for its members; that the research conducted by petitioner is in furtherance of its educational purposes; and that the salaries paid to petitioner's officers and employees constituted reasonable compensation for services rendered in carrying out its purposes. The court implicitly determined that petitioner is organized exclusively for educational purposes within the meaning of section 421 of the Real Property Tax Law but concluded that only some of the 13 parcels in question were used exclusively for educational purposes and thus exempt. These appeals ensued. Initially, it is contended that petitioner is not an educational institution within the

meaning of section 421 of the Real Property Tax Law. Pursuant to section 421 (subd 1, par [a]), real property owned by a corporation organized or conducted exclusively for educational purposes and used exclusively for such a purpose is exempt from taxation. Section 421 (subd 1, par [d]) provides that said real property shall not be exempt if any officer, member, or employee of the owning corporation shall receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting its educational purposes; or if the organization thereof is a guise or pretence for making any other profit for the corporation, its members or employees; or if it is not in good faith organized or conducted for educational purposes. Education, as that term is used in section 421 (subd 1, par [a]), refers "to the development of faculties and powers and the expansion of knowledge by teaching, instruction or schooling" *(Matter of Swedenborg Foundation v Lewisohn,* 40 NY2d 87, 94). The term "exclusively", as used in the same subdivision, has been interpreted to mean "primarily" *(Matter of American Bible Soc. v Lewisohn,* 40 NY2d 78). Upon our examination of the record, it is the opinion of this court that the trial court correctly determined that petitioner was organized exclusively for educational purposes within the meaning of section 421. Having so concluded, we must now determine the propriety of the trial court's findings as to the exempt status of each parcel in question. Where the use of certain property is merely auxiliary or incidental to the exempt purpose, the exemption will not be defeated *(Matter of Association of Bar of City of N. Y. v Lewisohn,* 34 NY2d 143). The trial court granted exempt status to two parcels and part of a third. Located on these parcels were residence facilities, dining and recreational facilities, buildings containing classrooms and meeting rooms, a restored "village", a library and offices. In our view, these parcels were properly exempted *(Matter of Faculty-Student Assn. of State Univ. Coll. at Oswego v Sharkey,* 35 AD2d 161, affd 29 NY2d 621; *People ex rel. Clarkson Mem. Coll. v Haggett,* 274 App Div 732, affd 300 NY 595). The remainder of the third parcel was used for agricultural purposes and it was stipulated between the parties that no exemption was being sought for that part of the parcel. Six of the remaining parcels contain a maintenance building, recreation building, residence facilities for students, teachers and staff, meeting halls, and dining facilities. These facilities are reasonably incidental to the major purpose of petitioner. Consequently, it is our opinion that the trial court was in error in refusing to classify these parcels numbered 393, 396, 403, 507, 519 and 532 as exempt (see *Matter of Faculty-Student Assn. of State Univ. Coll. at Oswego v Sharkey, supra).* Parcels Nos. 405 and 388 contain an recreation building, a small golf course, lake frontage and maintenance buildings. As we believe these facilities to also be reasonably incidental to petitioner's main educational purpose, we conclude that these parcels should also have been granted tax exempt status *(Matter of Faculty-Student Assn. of State Univ. Coll. at Oswego v Sharkey, supra).* Parcel No. 286 has been denominated as an automotive center and contains two buildings, one used for general maintenance and the other as a garage. As these buildings are used in the upkeep of the vehicles used by petitioner in its activities, we are of the view that this parcel should also be exempt. The final parcel, Parcel No. 304, contains about one fourth of an airport runway and four buildings used for a hangar, aircraft storage, maintenance and flight operations. This airport is managed by a private individual who conducts his own business at the site which includes the sale of fuel and flight instruction. Fuel is also sold by the individual to accommodate private aircraft going to places other than functions of petitioner. These services are

open to all who land at the airport regardless of their involvement with petitioner's activities. Considering the utilization of this parcel, it is our opinion that its use is insufficiently related to petitioner's educational purpose so as to warrant tax exempt status and the trial court properly so found. The judgments, therefore, should be modified so as to reverse so much of the judgments as confirmed the assessments of Parcels Nos. 286, 388, 393, 396, 403, 405, 507, 519 and 532 for the years 1975 and 1976 and the said parcels should be declared exempt from real property taxation, and, as so modified, the judgments should be affirmed. Judgments modified, on the law and the facts, so as to reverse so much thereof as confirmed the assessments of Parcels Nos. 286, 388, 393, 396, 403, 405, 507, 519 and 532 and said parcels are declared exempt from real property taxation, and, as so modified, affirmed, without costs. Greenblott, J. P., Sweeney and Main, JJ., concur; Staley, Jr., J., dissents and votes to reverse in the following memorandum. Staley, Jr., J. (dissenting). I respectfully dissent since I do not agree with the majority or the trial court that petitioner was organized or conducted exclusively for educational purposes within the meaning of section 421 of the Real Property Tax Law. Section 421 of the Real Property Tax Law provides, in pertinent part, as follows: "Non-profit organizations 1. (a) Real property owned by a corporation or association organized or conducted exclusively for religious, charitable, hospital, educational, moral or mental improvement of men, women or children or cemetery purposes, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes either by the owning corporation or association or by another such corporation or association as hereinafter provided shall be exempt from taxation as provided in this section." Petitioner was organized pursuant to section 216 of the Education Law on September 28, 1972. Petitioner operates as a membership organization with over 50,000 members. The membership consists of corporations, associations, partnerships, institutions, individuals engaged in business management or any administrative unit of business or government. Petitioner renders services as management consultant to its membership organization of corporate and individual members. Petitioner's certificate of incorporation provides: "4. The consolidated corporation hereby created shall be a non-stock corporation organized and operated exclusively for educational purposes". However, the actual conduct of petitioner's business activities is expanded greatly beyond the simple provision in its certificate that it is organized and operated exclusively for education purposes. Petitioner's operation consists of: "a) conducting world wide 2-day to 4-week seminars, courses and briefing. b) sending its directors to various businesses, institutions, municipalities, foreign government and making analysis of its particular problem and recommendations. c) Being the largest publisher of business management books in the world. d) conducting home study courses, in-house development programs, including assessment center programs, tapes, records, cassettes and films, a management information service, a mail order book service, a long range team planning service, an executive compensation service covering the United States and twenty foreign countries. e) Provides a library of 12,000 books and 100,000 publications in its New York City center and 2500 books in its Madison center and an answering service giving some 28,000 requests for information in 1975 from its New York City center." In petitioner's Exhibit No. 7, a letter by its president outlining a description of petitioner's operations, he stated: "Many times during the year, I'm asked for a short description of the American Management Associations. It gets harder and harder to give a simple answer because AMA keeps adding to

the services it offers for management education at all levels. * * * For instance, you probably know about AMA's meetings. (Last year nearly 100,000 attended our world-wide programs.) But you may not know that AMA is the largest publisher of business management books in the world. * * * You may also not be aware that AMA is a leading producer of programmed instruction for management (trademarked PRIME). A management information service with a storehouse of over 100,000 items. A mail order book service. A longrange 'team planning' service. A Profession Institute. And an Executive Compensation Service, with comprehensive reports covering the U.S., and 20 foreign countries. In short, AMA is a not-for-profit education membership organization for all types of management development. We endeavor to reflect in all of our activities the key fact that AMA is truly a membership organization. This is our great strength; through us members are given a forum to express and exchange ideas and thinking related to management education." The income statement for the year 1975-1976 reflects the following:

| | |
|---|---|
| Income: Meeting activities | $23,241,170 |
| Membership dues | 4,098,031 |
| Multimedia training purposes | 2,771,480 |
| Management publications | 5,883,931 |
| Executive compensation subscriptions | 2,916,493 |
| Other | 681,836 |
| | $39,592,941 |

The basic conclusion from the total activities of the petitioner is that petitioner is a trade organization providing services as consultant for its members and nonmember subscribers, and only minimally conducts educational programs. The majority opinion is blinded to reality when it states "Upon our examination of the record, it is the opinion of this court that the trial court correctly determined that petitioner was organized exclusively for educational purposes within the meaning of section 421". To the contrary, the record clearly establishes that the threshold question of "organized or conducted exclusively for educational purposes" is not established by the record, and the petition should be dismissed in its entirety. In *Matter of Association of Bar of City of N. Y. v Lewisohn* (34 NY2d 143), the court stated (pp 153-154): "We begin with the proposition that to qualify for exemption under section 421, it is necessary, first, that the corporation or association seeking exemption be organized exclusively for one or a combination of the denominated statutory purposes; and, second, that the property be devoted exclusively to such use. * * * Accordingly, 'exclusive', as used in the context of these exemption statutes, has been held to connote 'principal' or 'primary'. * * * Applying these guidelines to the facts before us, we conclude that petitioners' properties do not qualify for exemption. The Association of the Bar of the City of New York is not organized and conducted primarily for charitable or educational purposes. It is an association of professionals organized for traditional Bar Association purposes and primarily concerned with the professional interests of its members. While it has functions and attributes properly characterizable as educational and, to a somewhat lesser extent, as charitable, these are incidental and peripheral only. By way of example, its educational activities, while not reserved to professionals, are predominantly professional in nature and orientation and designed to advance the interests and standing of its members." Similarly, petitioner is an association of business executives organized for business

management purposes, and is primarily concerned with the business interests of its members. In *Matter of Swedenborg Foundation v Lewisohn* (40 NY2d 87) the court, holding that the claim of exemption under section 421 on the ground of conducting educational purposes was invalid, stated (pp 94-95): "It is then urged that the foundation was organized and is conducted exclusively for *educational* purposes, i.e., to 'educate' people as to the writings and views of Emanuel Swedenborg. So to hold in our opinion would involve an unacceptable extension of the concept of education. We think *education, at least within the contemplation of subdivision 1 of section 421,* refers to the development of faculties and powers and the expansion of knowledge by teaching, instruction or schooling. We distinguish the very much broader process of the communication of facts and ideas. While it may be that a small portion of the foundation's activities includes the supplying of lecturers and participation in seminars, it cannot be said that the foundation is itself directly affiliated with any recognized educational institution nor does any significant portion of its activities form part of an organized instructional program. Its financial support of scholarly research by others does not constitute educational activity. Although it is true that the consent of the State Department of Education was obtained for the 1928 amendment of the foundation's certificate of incorporation, we do not find that circumstance determinative. More significant are the facts that the foundation was not chartered by the Board of Regents and it is not classified as an educational institution by the Department of Education. To adopt the concept of education advanced by appellant would appear to be to accord an unqualified tax exemption to any corporation or association engaged principally in the dissemination of information and ideas, or at least to invite litigation to that end. We do not read the statute as so unlimited." (Emphasis in original.) Petitioner has completely failed to establish that the conduct of its corporate activities is exclusively, principally or primarily for educational purposes, and the claimed exemption should be totally denied.