The **CACHE LA POUDRE RESERVOIR CO.,** Petitioner,

v.

The **INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO and Division of Employment,** Respondents.

No. 87CA1718.

Colorado Court of Appeals, Div. III.

May 12, 1988.

Fischer, Brown, Huddleson & Gunn, William H. Brown, Lisa K. Clay, Fort Collins, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Aurora Ruiz–Hernandez, Asst. Atty. Gen., Denver, for respondents.

METZGER, Judge.

Cache La Poudre Reservoir Company (Company) seeks review of a final order of the Industrial Claim Appeals Office (Panel) which determined that services performed by the employees of the company do not meet the requirements for exempt employment as "agricultural labor" pursuant to § 8–70–103(11)(a)(I)(C), C.R.S. (1986 Rep. Vol. 3B) for unemployment compensation tax liability purposes. We affirm.

The Company, a not-for-profit mutual reservoir company, stores and supplies irrigation water to surrounding farmers for agricultural purposes. It also has entered into a ten-year lease with a third party for the use of the reservoir and surrounding lands for "fishing, hunting, and other recreational purposes." Pursuant to the lease terms, the Company receives $12,000 to $15,000 a year plus the provision by lessee of public liability insurance covering the Company. Additionally, the Company has granted to a different third party "the right to hunt and fish and trap for th[e] rest of his life" on the reservoir property.

For the Company's employees to be performing services not subject to unemployment compensation tax liability, they had to be engaged in "agricultural labor." Section 8–70–103(11)(a)(I)(C), C.R.S. (1986 Repl.Vol. 3B) defines exempt "agricultural labor," in pertinent part, as any service performed:

> "in connection with the operation or maintenance of ditches, canals, reservoirs, or waterways, not owned or operated for profit, used exclusively for supplying and storing water for farming purposes;"

In determining whether the Company's use of the reservoir met the requirement of "used exclusively for supplying and storing water for farming purposes," the Panel strictly interpreted "exclusively" to mean "no exceptions, only, singlely [sic] or solely." The Panel further interpreted the phrase "used exclusively" to apply to all uses of the water, not just consumptive uses, relying in part on Rev.Rul. 71–293, 1941–1 C.B. 403.

The Panel then determined that, for the Company to meet this requirement, it could utilize its reservoir water only for farming purposes. Finding that the recreational use of the reservoir was not a farming purpose, the Panel concluded that the Company's reservoir was not used "exclusively for supplying and storing water for farming purposes," that consequently the Company's employees were not engaged in "agricultural labor," and that the Company therefore did not qualify for an unemployment tax liability exemption pursuant to § 8–70–103(11)(a)(I)(C), C.R.S. (1986 Repl. Vol. 3B).

On review, the Company contends that the Panel erred in adopting a strict interpretation of the term "exclusively." It argues that the Panel should have adopted a broader construction allowing an incidental, secondary use such as its recreational use. We disagree.

In determining the meaning of the word "exclusively," this court must give effect to its plain and ordinary meaning and avoid strained interpretations. *People v. Lewis*, 680 P.2d 226 (Colo.1984); *Harding v. Industrial Commission*, 183 Colo. 52, 515 P.2d 95 (1973). "Exclusively" has been defined as: "with the exclusion of all others; without admission of others to participation. . . ." *Ballentine's Law Dictionary* 430 (3rd ed. 1969).

We are not persuaded by the Company's citations to authority from other jurisdictions in which the term "exclusively" was interpreted in other tax and unemployment compensation statutory schemes to mean "primarily" and "principally," thereby allowing secondary or incidental uses of the property. *See Honeywell Information Systems, Inc. v. County of Sonoma*, 44 Cal.App.3d 23, 118 Cal.Rptr. 422 (1974); *Evangelical Hospital Ass'n v. Novak*, 125 Ill.App.3d 439, 80 Ill.Dec. 640, 465 N.E.2d 986 (1984); *Division of Employment Se-*

curity v. Industrial Commission, 242 S.W.2d 593 (Mo.Ct.App.1951); American Management Associations v. Assessor, 63 A.D.2d 1102, 406 N.Y.S.2d 583 (1978).

We conclude that if our General Assembly had intended such an outcome, it would have provided for it specifically, by using either the word "principally" or "primarily" instead of the word "exclusively." For example, see § 8–70–103(10)(g)(I), C.R.S. (1986 Repl.Vol. 3B), where, in a comparable section defining exempt employment, the statute provides that employment does not include services performed "in the employ of an organization which is operated *primarily* for religious purposes and which is operated ... or *principally* supported by a church...." (emphasis supplied)

Accordingly, we hold that the Panel correctly interpreted the word "exclusively" in § 8–70–103(11)(a)(I)(C), C.R.S. (1986 Repl. Vol. 3B) to mean without any exception or solely. We further hold the Panel correctly interpreted the phrase "used exclusively" to apply to all uses of the water, not just consumptive uses. *Cf.* Rev.Rul. 71–293, 1941–1 C.B. 403.

We recognize that these interpretations may subject some reservoir owners to unemployment compensation tax liability. However, contrary to the Company's assertions, imposition of such liability will not contravene any public policy concerning maximum utilization of water. Owners of not-for-profit reservoirs will still be free to utilize their resources for any legal, desired secondary or incidental uses.

Since the Panel's findings of fact are supported by the record and since we have concluded that the Panel correctly interpreted and applied the law to the facts, we will not disturb the order on review. *See* Sims v. Industrial Commission, 627 P.2d 1107 (Colo.1981).

Order affirmed.

STERNBERG and HUME, JJ., concur.