PUBLIC SERVICE COMPANY OF
COLORADO, Petitioner,

v.

Michael H. INGLE and the Industrial
Claim Appeals Office of the State of
Colorado, Respondents.

No. 89CA1637.

Colorado Court of Appeals,
Div. II.

June 14, 1990.

Kelly, Stansfield & O'Donnell, Marla S. Petrini, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Carolyn A. Boyd, Asst. Atty. Gen., Denver, for respondent Industrial Claim Appeals Office.

No appearance for respondent Michael H. Ingle.

Opinion by Judge SMITH.

Public Service Company, employer, seeks review of a final order of the Industrial Claim Appeals Office (Panel) which awarded unemployment compensation benefits to claimant, Michael H. Ingle. We set aside the order of the Panel and remand.

Claimant worked for employer as a computer operator. Management initially placed claimant on the day shift, but later told him he was being transferred to the night shift for cross-training purposes. Claimant told his supervisor that he did not believe he could work the night shift and sleep days because he had a sleep disorder. Management requested written medical verification of claimant's medical condition. Claimant decided not to provide the verification, but instead attempted to work the night shift. He so advised management.

Claimant worked the night shift for about two weeks, during which time his work performance was affected because he had trouble sleeping. Claimant tendered verbal and written resignations, citing his medical problems as the reason for his resignation. Employer did not request written medical substantiation of claimant's assertion that he was quitting for medical reasons.

The hearing officer found that claimant quit his job for health reasons and that employer was fully informed of these reasons when claimant quit. The hearing officer then concluded that claimant's state of health required him to seek a different kind of work.

The hearing officer also found that, once employer accepted claimant's decision to work the night shift and did not request written verification of claimant's medical condition again when claimant quit, employer waived, in essence, any request it had made that claimant provide written verification of his medical condition. Accordingly, the hearing officer granted claimant benefits pursuant to § 8–73–108(4)(b)(I), C.R.S. (1986 Repl.Vol. 3B). The Panel affirmed.

I.

■ Employer contends that the Panel erred as a matter of law in interpreting the phrase "new occupation" and in awarding

claimant benefits pursuant to § 8–73–108(4)(b)(I). We agree.

Section 8–73–108(4)(b)(I) provides for an award of benefits if a worker's health is such that he "must seek a *new occupation*." (emphasis supplied)

In affirming, the Panel noted it applied a very broad definition of "occupation." The Panel concluded that the requirement that claimant seek a "new occupation" was satisfied when the health of the worker prevented him from continuing in a specific job because of the conditions of that particular employment, even though the claimant could continue in the same line of work. Under the Panel's interpretation, then, a claimant would satisfy the requirement of seeking a "new occupation" if he simply had to seek a new job because of work-related health reasons. This would be true even if the new job were in the same line of work as the job he quit.

Employer argues, however, that claimant's health did not prevent him from seeking and performing the same type of work he had been performing as a computer operator under different employment conditions. Therefore, employer asserts, claimant was not required to seek a "new occupation" and benefits were improperly awarded.

██ The primary task in construing a statute is to ascertain the intent of the General Assembly. *People v. Beyer*, 768 P.2d 746 (Colo.App.1988). To do so, we must consider the statute as a whole, construe the entire act to give consistent, harmonious, and sensible effect to all its parts, and consider the ends the statute is designed to accomplish. *See Redin v. Empire Oldsmobile, Inc.*, 746 P.2d 52 (Colo. App.1987).

██ In ascertaining the legislative intent, meaning is to be given to every word, phrase, clause, sentence, and section, if possible. *Denver v. Taylor*, 88 Colo. 89, 292 P. 594 (1930). Further, in determining the meaning of the word "occupation," we must give effect to its plain and ordinary meaning and avoid strained interpretations. *See Cache La Poudre Reservoir Co. v.*

*Industrial Claim Appeals Panel*, 757 P.2d 173 (Colo.App.1988).

██ Upon consideration of these principles, we conclude the Panel misinterpreted the phrase "new occupation" as it is used in § 8–73–108(4)(b)(I). We conclude that "occupation," in its plain and ordinary meaning, generally refers to the particular type of business, profession, or employment in which a worker regularly engages, *i.e.,* the particular *type of work* a worker performs. It has no relationship to specific employers. Thus, a worker could be engaged in an occupation as a doctor, computer operator, plumber, electrician, secretary, bus driver, etc., either on his or her own or for *any* employer who employs a person who performs that type of work.

██ On the other hand, "employment," "job," or "work" usually connotes a particular position held by an individual at a particular place of work at a given time. Therefore, "occupation," has a different meaning than "job," "employment," and "work," as it is used in the statutory sections relating to qualifications for unemployment compensation.

That the General Assembly intended such a result is supported by a review of the specific statutory sections involved here.

██ Pursuant to § 8–73–108(4)(b)(I), a claimant may be awarded benefits when his termination is health related under three general categories: (1) the health of the worker requires him to be separated from his *employment* for a period of time; (2) the worker's health requires him to seek a new *occupation;* or (3) the health of the worker, his spouse, or his dependent child requires him to leave the vicinity of his *employment.* Thus, by this provision, the General Assembly twice premised an award of benefits on a claimant's having been separated from his *employment* and once on a claimant's having been required to seek a new *occupation.*

By its choice of words, the General Assembly has indicated its intention to differentiate between "employment" and "occupation." *See State v. Borquez*, 751 P.2d

639 (Colo.1988). Consequently, we conclude that the General Assembly intended that a claimant be required to seek a new "occupation" or line of work, and not just new employment, in order to be eligible for benefits under the second condition of § 8–73–108(4)(b)(I). Hence, the Panel erred in granting claimant an award of benefits pursuant to this section.

## II.

 Although an award of benefits premised on the "new occupation" portion of the statute was improper, claimant could be entitled to benefits if his sleep disorder caused him to be unable to continue his job. Employer, however, contends that claimant has not satisfied the requirements of the statute for such eligibility because he did not provide a written medical statement substantiating that he was quitting because of his health condition. We reject employer's contention.

Pursuant to § 8–73–108(4)(b)(I), a claimant who quits for health reasons must inform his employer of the condition of his health prior to his separation from employment and substantiate the cause by a competent written medical statement issued prior to his separation if so requested by his employer prior to his separation or within a reasonable time thereafter.

Employer contends that because it requested a medical statement from claimant when he asked not to be transferred to the night shift because of health reasons, and claimant refused to provide any medical documentation at that time, it was not required to ask for medical substantiation again when claimant resigned, citing the same health reasons. It argues that it was entitled to assume claimant would again refuse to provide the documentation. Therefore, employer concludes that claimant failed to comply with the statutory requirement of providing written substantiation of his medical condition when so requested by employer. We disagree.

We construe § 8–73–108(4)(b)(I) to require an employer to request a claimant to provide competent written medical substantiation that health reasons are the cause of his separation from employment after the claimant informs the employer that he is resigning for health reasons.

Here, the employer did request a medical statement when the claimant objected to the transfer to the night shift, but the employer did not request a statement to "substantiate the cause" of his *resignation* when claimant subsequently notified the employer several weeks later that he was quitting because of his health condition. Consequently, since employer failed to request written substantiation as is required by the statute, claimant is not precluded from being entitled to unemployment benefits by virtue of not having provided the written medical statement concerning the reasons for his resignation.

The order of the Panel is set aside, and the cause is remanded to the Panel for re-consideration under the more appropriate statutory provisions referred to herein.

METZGER and PLANK, JJ., concur.